W. D. JONES et al., Complainants-Appellants, v. OLEN F. MORRISON et ux., Defendants-Appellants. —458 S.W.2d 434.

Middle Section. February 27, 1970.

Certiorari Denied By Supreme Court July 20, 1970.

W. Clarence Mason, Womack & Mason, Fayetteville, Thurman Thompson, Lewisburg, for defendants-appellants.

Stevens & Bagley, Fayetteville, for complainants-appellees.

## I.

## THE CASE

SHRIVER, P. J. (M. S.). This case, which is before the Court of Appeals for the second time, involves an encroachment by the appellants, Morrison and wife, on the property of the appellees, Jones and wife, and the amount of damages to which the appellees are entitled by reason of said encroachment.

The original bill filed by the complainants, W. D. Jones and wife, in June, 1966, alleges that complainants are the owners of a parcel of land in the Town of Fayetteville, Tennessee, with two houses located thereon, and that the defendants, Olen F. Morrison and wife, are the owners of a lot adjacent to that of the complainants; that in September, 1965, the defendants constructed a building on their property which encroached or extended over the boundary line between the properties onto that of the complainants, and that, in addition to constructing a building which encroached on complainants' lot, the defendants also made an excavation some nine feet in depth along part of the rear line of complainants' lot and took away about six feet of the dirt, thus leaving an embankment along the rear of said lot which became a dangerous hazard; that said encroachment was in disregard of complainants' property rights after defendant had been advised of the location of the line and the prospective encroachment.

The bill prayed for a mandatory injunction requiring defendants to remove the portion of the building which

encroached on their lot and to restore the property insofar as possible to its condition prior to the encroachment, and for damages and general relief.

The defendants answered, denying certain material allegations of the bill, and after a hearing on oral and documentary evidence, Chancellor Templeton wrote a Memorandum Opinion followed by a decree which established the boundary line between complainants' and defendants' lot and found that Morrison had wilfully encroached on complainants' property, or at least did so in such reckless manner as to amount to a wilful encroachment, and ordered and decreed that a mandatory injunction issue commanding the defendants to remove said encroachments and substantially restore the property to its prior condition within ninety days from the entry of the decree.

From the foregoing decree, the defendants, Morrison and wife, appealed to this Court. In an opinion and decree filed March 29, 1968, written by Judge W. P. Puryear, this Court modified the decree of the Chancellor, observing, among other things, that the learned Chancellor appeared to be of the opinion that, under the facts of the case, he had no right to refuse to grant the mandatory injunction prayed for; however, under the broad powers of a Court of Equity and under the general rule as set forth in the cases and textbooks, the Chancellor was not necessarily compelled to grant a mandatory injunction; and stating:

"Although there is much evidence in the record to show that Morrison was warned by Mr. Jones that if he located the building where he said he wanted to locate it, he would, at his own peril, encroach upon the

Jones lot, the harshness of applying the mandatory injunctive process in this case compels us to closely examine Morrisons' reasons for taking the action which resulted in encroachment upon complainants' land.''

\* \* \* \* \* \*

''In our opinion, the facts of the case make it necessary for us to exercise our discretion, in reviewing this case de novo, by denying the complainants the right to a mandatory injunction compelling the defendants to remove that portion of their building which encroaches upon complainants' land, and instead, order a recovery of damages in favor of complainants and against defendants.

An examination of the record fails to disclose to us sufficient evidence therein from which we can determine the amount of damages which the complainants are entitled to recover from the defendants for encroachment upon complainants' property.''

\*. \* \* \* \* \*

''For the purpose of fixing such damages the case will be remanded to the trial Court. Of course, the amount awarded to the complainants should include such damages as they sustained by reason of the fact that dirt was piled upon their property during construction, because we find that the evidence preponderates against the contention of defendants that this dirt was piled upon complainants' property with their consent.''

Petition for certiorari was denied by the Supreme Court and, on remand, Judge William S. Russell heard the case sitting in the place and stead of Chancellor Templeton. It appears that on September 9, 1968, the defendant, Morrison, moved the Court to refer the cause to the Master to take proof and report on the amount of the damages, but this motion was overruled by Chancellor Templeton and a similar motion was later heard and overruled by Judge Russell. The case then came on to be heard before Judge Russell on oral testimony of complainant W. D. Jones and that of A. G. Jennings, Jr., Paul Monks and Leon Richardson, real estate men, whereupon, the cause was taken under advisement, and on April 7, 1969, Judge Russell filed a Memorandum Opinion which was made a part of the record and which sets forth his findings of fact and conclusions of law, which opinion we quote in full, as follows:

## II.

## OPINION OF THE CHANCELLOR

### Memorandum Dated April 3, 1969

"This case was remanded by the Court of Appeals for the fixing of damages. The undersigned Circuit Judge was requested by the Chancellor to sit by interchange in the matter.

The case was originally brought by the property owners, Mr. and Mrs. Jones, seeking a mandatory injunction requiring the respondents to remove a building said to have been encroaching upon petitioners' land. The Chancellor found that the building was, in fact, an encroachment, and granted the injunction. The Court of Appeals agreed that there was an encroachment; but held that the

bill was maintainable for the purpose of establishing a disputed boundary, and that an award of damages was the equitable relief appropriate to the case. Since the proof of damages was not satisfactory, the case was remanded for more proof. The Court of Appeals did not touch upon whether damages should be compensatory only, or if punitive damages could also be awarded. The opinion indicated that the measure of damages would be the diminution in value of the property encroached upon, in effect allowing the encroachment to remain as an easement but requiring that damages be paid.

A hearing was held at which the undersigned heard proof on the question of damages. The proof showed that 523 square feet of petitioners' property had been unlawfully appropriated. The proof further showed that a potentially dangerous embankment was created and left unguarded, that erosion was precipitated, and that respondents piled dirt 5-6 feet high over most of the back yard of petitioners and that it stayed there 3-4 weeks. It was testified to that a retaining wall was now needed, that it would cost $250.00; and that it would cost $90.00 to fill in the holes left in petitioners' back yard. The owner testified to a value diminution of $2,500.00. It was also in evidence that respondents paid $3.00 and $2.42 per square foot for their lots. The respondents introduced the testimony of A. G. Jennings, Jr. and Leon Richardson, real estate agents, who testified that there was no diminution in value to petitioners' property because of the encroachment; although the latter testified on cross-examination that respondents paid $3.00 and $2.40 per square foot for their adjoining land from which the encroachment came. Paul Monks, another real estate expert called by respondents testified that any damages

to petitioners' lot was 'very negligible'. It was shown that there was no loss of rental, then or now.

It seems to me that when respondents appropriated 523 square feet of land into adjoining property that they had paid $3.00 and $2.42 per square foot for that they could hardly complain at an evaluation of $2.42 per square foot, or $1,265.66. The only specific testimony on the amount of value diminution is $2,500.00. Testimony that there is no diminution, or 'very negligible' diminution, is incredible. It is obvious, also that a retaining wall and fill dirt is now needed, the costs of which total $340.00. I feel that the diminution in value is not $2,-500.00, nor is it 0; but it is $1,605.66. I award compensatory damages of $1,605.66.

I feel that this is also a case for punitive damages. The Court of Appeals, in its wisdom, found a way around the severe loss that the encroachers would suffer because of a mandatory injunction requiring removal of their encroaching building. The learned Chancellor would most likely have done likewise had he felt that he had the authority. The effect of the decision is that one party to a boundary dispute, who was wrong about where the line was and who went ahead without any court sanction and built a valuable structure on the land, is permitted to keep it by simply paying damages. He had exercised, in effect, a private citizen condemnation of abutting land. He has put his neighbor to costly litigation, has ended up with the land, and has been ordered to pay damages.

I feel that public policy and equity demand that punitive damages be assessed. On the question of punitive damages, I take judicial notice of the entire record, as well as the proof heard by me. The state of mind of the

trespassers and their agents is most extremely illustrated not by the encroachment per se, but by dumping vast quantities of dirt onto petitioners' lot without any color of right and leaving it there until it suited them to remove it. And if we assume a good faith boundary line dispute, was not the primary responsibility for a court quieting of the title upon him who was about to make a valuable improvement thereon? I feel that the Court of Appeals, quite correctly and in its wisdom, lessened the great loss that the encroachers would have suffered because of a mandatory removal of their structure; but I do not read that learned opinion to negate punitive damages, and do not believe that it was meant to.

Here, we are dealing with a large, successful, multi-county white real estate developer on the one hand; and a small uneducated Negro property owner on the other. We must not, as I see it, encourage property line disputes to be settled by precipitous, unilateral unsanctioned encroachment, with no possible penalty other than having to pay for what has been taken. This amounts to condemnation by a private individual. If he was in good faith, the courts were open for a bill to quiet title.

I set $1,500.00 as punitive damages in this case.

Draw decree accordingly, with appeal if desired. Let this memorandum be a part of the record going to the Court of Appeals.''

/s/William S. Russell

Circuit Judge,

sitting
by interchange''

## III.

## ASSIGNMENTS OF ERROR

"1.

The Trial Court erred in holding that this is a proper case for punitive damages.

2.

The Trial Court erred in allowing punitive damages in the amount of $1,500.00.

3.

The Trial Court erred in holding that 523 square feet of appellees' real property has been unlawfully appropriated.

4.

The Trial Court erred in not holding and applying the rule that: If injuries to realty are of a paramount nature, the difference in market value just before and just after, is the measure of damages."

## IV.

## OUR CONCLUSIONS

Assignments Nos. 1 and 2 complain of the action of the Trial Court in awarding punitive damages in the amount of $1,500.00.

It cannot be seriously contended that the Chancellor was acting beyond his jurisdiction or in excess of his authority in considering and allowing punitive damages.

In Kneeland v. Bruce, 47 Tenn.App. 136, 336 S.W.2d 319, the Court said:

"On the subsidiary question of whether exemplary or punitive damages were properly recoverable in the instant case, we think the matter is concluded by the recent decision of the Supreme Court in the case of Bryson v. Bramlett (1958), 204 Tenn. 347, 321 S.W.2d 555, and by the decision of this Court in McDonald v. Stone, 45 Tenn.App. 172, 321 S.W.2d 845, in which last-named case certiorari was denied by the Supreme Court on the same day that a rehearing was denied in Bryson v. Bramlett. The Chancery Courts of this State have ample jurisdiction to award exemplary or punitive damages in proper cases, and the case at bar was a proper one for the application of that jurisdiction."

Counsel for the appellant quote from the opinion of this Court, wherein it was pointed out that complainants below did not file suit or seek a prohibitory injunction when they first discovered that an encroachment was being made on their land but filed suit after the building was completed.

On the other hand, the record clearly demonstrates that Mr. Morrison and his contractors were notified by the complainant Jones of his insistence as to where the boundary line was located and that, in spite of this notification, they went ahead with the building and the excavation at the rear of complainants' lot which encroached thereon, leaving a dangerous embankment to which the occupants, including children, were exposed.

Furthermore, after the building was erected, the defendants proceeded to dig a trench along the back of the building and pour a concrete slab which further encroached on the property of complainants, and, in the

process, they piled a large quantity of dirt on complainants' lot which was far beyond the boundary line as originally claimed by the defendants.

Thus, in spite of the rather weak excuses offered by the defendant as to the location of the boundary line and contention that the contractor acted in some of these matters without his consent, we feel compelled to agree with the Trial Judge in his conclusion that the facts and circumstances shown by this record support his awarding of exemplary damages.

We do not think that Bryson v. Bramlett, 204 Tenn. 347, 321 S.W.2d 555, cited by counsel for appellants, is authority for the position urged by them. However, said case, among other things, holds that where Chancery Court takes jurisdiction for one purpose, it takes jurisdiction for all purposes including civil causes of action for injuries to person, property or character, involving unliquidated damages.

■ Assignment of Error No. 3 complains of the finding of the Court that 523 square feet of the complainants' land was unlawfully appropriated.

It may be true that the estimate of the size of the area appropriated and calculated by the complainant Jones to be 523 square feet is inaccurate. Also, his estimate of $2,500.00 as the amount of diminution in value of his property is in conflict with the estimate of defendants' witnesses who said that there was no diminution in value by reason of the taking, or that, at least it was very negligible. However, these estimates are not conclusive of the question of damages for the taking.

Assignment No. 4, which should be considered along with Assignment No. 3, charges error on the part of the Trial Judge in determining the measure of damages.

It will be noted from the memorandum of Judge Russell hereinabove quoted, that the only specific testimony on the amount of diminution in value is $2,500.00, as testified by the complainant, and that of the defendants' witnesses who said that either there was no diminution or that it was very negligible. The Trial Judge observes that the testimony of defendants' witnesses "is incredible". He then gives consideration to the necessity for building a retaining wall to prevent the dirt from washing or falling away at the rear of complainants' lot where the excavation was made and some kind of wall or fence to avoid the hazard of a nine foot drop-off at the rear of the lot, and concluded: "I award compensatory damages of $1,605.66."

It is earnestly argued by counsel for the defendants that the measure of damages in a case of this kind is the difference in value of complainants' property before and after the taking, citing several authorities in support of this proposition.

We must remember that this is not a case in which there was a legal or lawful taking of complainants' land by eminent domain, wherein the authorities cited by defendants' counsel would apply. This was a wilful taking or encroachment by the defendants on complainants' land without authority or legal sanction. The courts can hardly be expected to sanction such action by holding that, after one has unlawfully appropriated the property of another and erected a building thereon, or otherwise appropriate to his use, the only remuneration the owner

can claim or expect is the market value of the property taken as measured by the formula laid down in eminent domain cases involving a willing seller and willing buyer.

This Court, in disagreeing with the learned Chancellor who granted a mandatory injunction requiring the tearing down of the building as it encroached upon complainants' property, did so partially because of the facts and circumstances shown, including the fact that the complainant had not sought the aid of the Court when the encroachment began, and partly in an effort to apply a more equitable and realistic remedy on the question of damages as against the rather harsh and extreme remedy of requiring a large and expensive building to be torn away.

Under all of the facts and circumstances, we feel that the defendant Morrison is not in position to complain of some difference in the estimate of damages as arrived at from the facts by the Trial Judge when weighed against what might have been the result with good reason in affirming the original order of the Chancellor granting a mandatory injunction.

For the reasons hereinabove set forth, we feel that the result reached by the Trial Court is fair, equitable and proper, and his judgment is accordingly affirmed.

Affirmed.

Puryear and Todd, JJ., concur.