The NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY, et al., Appellees,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, et al., Appellants.

No. 91–5208.

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1992.

Decided May 29, 1992.

John S. Koppel, Attorney, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Michael Jay Singer, Attorney, Dept. of Justice, were on the brief, for appellants. John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., also entered appearances, for appellants.

Jeffrey Pash, with whom Jonathan Foot and Maria Foscarinis were on the brief, for appellees.

Before: WALD, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Federal agencies responsible for administering the Stewart B. McKinney Homeless Assistance Act (the "McKinney Act") appeal from decisions of the District Court enforcing a permanent injunction ("Enforcement Decisions"). Under § 501 of the McKinney Act, representatives of the homeless may apply to the Department of Health and Human Services ("HHS") for underused federal property, including so-called "surplus" property. The Enforcement Decisions direct HHS to give qualified approval to § 501 applicants who lack the necessary financial resources but are otherwise qualified and indicate an intention to apply for a monetary grant under Title IV of the McKinney Act. Because we find that the Enforcement Decisions do *not* require the "assignment" of surplus property to HHS, or its "transfer" to a representative of the homeless, we affirm.

I. BACKGROUND

McKinney Act was passed in 1987. *See* Pub.L. No. 100–77, 101 Stat. 482 (1987). Title IV authorizes monetary grants to help homeless persons. Section 501 of title V makes federal real property available for them. This section was amended by the Stewart B. McKinney Homeless Assistance Amendments Act of 1988, Pub.L. No. 100–628, § 501, 102 Stat. 3224, 3240 (1988), and then again by the Stewart B. McKinney Homeless Assistance Amendments Act of 1990, Pub.L. No. 101–645, § 401, 104 Stat. 4673, 4719–23 (1990). Under the current version of § 501, the Department of Housing and Urban Development ("HUD") periodically canvasses landholding agencies concerning underused properties, and compiles a list of properties that are suitable and available for the homeless. This list is published, and "representatives of the homeless," including private nonprofit organizations, may submit applications to HHS. A timely and acceptable applicant usually will receive the requested property, by deed, lease or permit. *See* 42 U.S.C.A. § 11411 (West 1992) (codifying § 501).

The instant case commenced in 1988, when private nonprofit homelessness organizations and a homeless person brought suit in the District Court against federal agencies responsible for administering the McKinney Act, including HUD, HHS and the General Services Administration ("GSA"). The District Court entered a preliminary injunction requiring the defendants to comply with § 501, *see National Coalition for the Homeless v. United States Veterans' Admin.*, 695 F.Supp. 1226 (D.D.C. 1988), and then made this injunction permanent, *see National Coalition for the Homeless v. United States Veterans Admin.*, Civ.A. No. 88–2503–OG, 1988 WL 136958 (D.D.C. Dec. 15, 1988).

The plaintiffs subsequently moved for an order enforcing the injunction, and the Dis-

trict Court granted enforcement. *See National Law Ctr. on Homelessness & Poverty v. United States Veterans Admin.,* 765 F.Supp. 1, 3–13 (D.D.C. 1991) ("First Enforcement Decision"). The order concerned a particular kind of § 501 applicant: an applicant that (a) intends to apply for a grant under Title IV of the McKinney Act, but has not yet done so, and has no other source of funding; and (b) in all other respects is eligible to receive the requested property. We will refer to such an applicant as "wholly unfunded, but otherwise acceptable." The District Court ordered that "HHS must allow an intent to apply for Title IV funds to be sufficient to satisfy the homeless provider's financial showing requirement." 765 F.Supp. at 13. What this order means is a matter of some dispute, and will be discussed below.

The defendants moved to alter or amend. They argued that the First Enforcement Decision violated HHS regulations covering the disposal of "surplus" property, which appear at 45 C.F.R. pt. 12. Surplus property is one of the categories available to representatives of the homeless under § 501. It is defined as "any excess property not required for the needs and the discharge of the responsibilities of all Federal agencies." 40 U.S.C. § 472(g) (1988).[1] The Federal Property and Administrative Services Act of 1949 ("FPASA") creates the basic framework for the disposal of surplus property. *See* 40 U.S.C. § 484 (1988). GSA generally administers disposal, and has a range of options. *Inter alia,* surplus property may be used for public health purposes.

Under such regulations as he may prescribe, the Administrator [of GSA] is authorized, in his discretion, to assign to ... the Secretary of Health and Human Services for disposal such surplus real property ... as is recommended by ... the Secretary of Health and Human Ser-

vices as being needed ... for use in the protection of public health....

*Id.* § 484(k)(1). 45 C.F.R. § 12.8(b) specifies the conditions under which HHS may request a public-health disposal.

Requests to the Administrator [of GSA] for assignment of surplus real property to [HHS] for transfer for public health purposes will be based on the following conditions:

(1) [HHS] has an acceptable application for the property.

(2) The applicant is willing, authorized, and in a position to assume immediate care, custody, and maintenance of the property.

(3) The applicant is able, willing and authorized to pay the administrative expenses incident to the transfer.

(4) The applicant has the necessary funds, or the ability to obtain such funds, to carry out the approved program of use of the property.

45 C.F.R. § 12.8(b) (1991).

The District Court found no inconsistency between its orders and 45 C.F.R. pt. 12, and therefore denied the defendants' motion to alter or amend. *See National Law Ctr. on Homelessness & Poverty v. United States Veterans Admin.,* 765 F.Supp. 1, 13–14 (D.D.C. 1991) ("Second Enforcement Decision").[2] The defendants now appeal from the Enforcement Decisions. As below, they rely upon 45 C.F.R. pt. 12.

## II. ANALYSIS

We read the Enforcement Decisions to require only that HHS give *qualified approval* to a wholly unfunded, otherwise acceptable application for surplus property. The disputed decisions do not require the "assignment" of any property by GSA to HHS, nor do they require the "transfer" of any property from HHS to a wholly unfunded, otherwise acceptable applicant. Thus construed, these decisions do not run

---

**1.** *See* 42 U.S.C.A. § 11411(h)(2) (West 1992) ("each of the terms 'excess property' and 'surplus property' has the meaning given that term under section 472 of Title 40"). "Excess" property is defined as "any property under the control of any Federal agency which is not required

for its needs and the discharge of its responsibilities." 40 U.S.C. § 472(e) (1988).

**2.** Both the First and the Second Enforcement Decisions are published under the same caption in the *Federal Supplement.*

afoul of 45 C.F.R. pt. 12 or the McKinney Act.

Our ruling is quite narrow. First, this appeal simply concerns surplus property. Appellants have ignored the other kinds of property made available by § 501, both in their appellate briefs and in the memoranda they filed with the District Court. Thus, we do not construe or review the Enforcement Decisions insofar as they pertain to non-surplus property.

Second, the interaction between the McKinney Act and the FPASA is not at issue. Appellees concede that 45 C.F.R. pt. 12 governs the disposal of surplus property pursuant to § 501 of the McKinney Act. For purposes of the instant case, we accept this concession.

45 C.F.R. § 12.8(b) is entitled "Assignment of surplus real property." "Assignment" is an intermediate step in the disposal of surplus property to a successful § 501 applicant. First, HHS approves an application for surplus property. Second, the property is "assigned" to HHS. *See* 42 U.S.C.A. § 11411(d)(4)(B) (West 1992) ("Surplus property for which an application has been approved shall be assigned promptly to [HHS] for disposition. . . ."). Finally, the property is "transferred" to the successful applicant.[3]

Appellants assert that the Enforcement Decisions require the "assignment" of surplus property to HHS, where a wholly unfunded, otherwise acceptable representative of the homeless applies for the property under § 501; and appellants suggest that the decisions may even require the "transfer" of surplus property to such applicant. We disagree. The Enforcement Decisions simply mean that HHS must give *qualified approval* to the application. In other words, HHS must certify that the applicant could legitimately receive the requested property, but for the applicant's insufficient financial resources. As appellees explain, such qualified approval will help the applicant gain funding. However,

qualified approval does not compel "assignment" by GSA to HHS.

There is nothing in 45 C.F.R. pt. 12 or the McKinney Act to bar the qualified approval of a wholly unfunded, otherwise acceptable application. 45 C.F.R. § 12.8(b) simply states that "[r]equests to the Administrator [of GSA] for assignment of surplus real property . . . will be based on the following conditions," which are then specified. As we have already explained, approval or qualified approval is a step that *precedes* the "assignment" of surplus property for a § 501 applicant. 45 C.F.R. § 12.8(b) does not govern this initial step, and the same is true of the second regulation relied upon by appellants, *see* 45 C.F.R. § 12.9(c)(5) (1991) (requiring "transferees" to carry insurance). Appellants have pointed to no other regulatory or statutory provision that might bar HHS from giving qualified approval to a wholly unfunded, otherwise acceptable application for surplus property, and we are aware of no such provision. Nor do they challenge the District Court's authority to order qualified approval, assuming the conformity of that practice with 45 C.F.R. pt. 12. Thus, we affirm the Enforcement Decisions.

There is no doubt that 45 C.F.R. pt. 12 bars the "assignment" to HHS of surplus property under § 501, where the applicant for the property is wholly unfunded; and there can be no "transfer" absent a prior "assignment." Appellees concede as much. The § 501 applicant's mere intent to apply for Title IV funds does not suffice to show that "[t]he applicant is willing, authorized, and in a position to assume immediate care, custody, and maintenance of the property" or that "[t]he applicant has the necessary funds, or the ability to obtain such funds, to carry out the approved program of use of the property." 45 C.F.R. § 12.8(b)(2), (4) (1991).

■ The question remains whether GSA should "hold" a property for a wholly unfunded, otherwise acceptable applicant, even though the property cannot be "as-

---

**3.** The parties use the term "transfer" to include deeds, leases and any other arrangement authorized by § 501. They also assume that 45 C.F.R. § 12.8(b) covers every such "transfer." For purposes of the instant case, we accept this usage and assumption.

signed" to HHS. Normally, where the § 501 application process has terminated, and no applications meet the criteria for "assignment," GSA is free to dispose of the property. The McKinney Act states:

(1) Properties published ... as available for application for use to assist the homeless shall not be available for any other purpose for a period of 60 days beginning on the date of such publication.

(2) If written notice of intent to apply for such a property for use to assist the homeless is received by the Secretary of Health and Human Services within the 60-day period described under paragraph (1), such property may not be made available for any other purpose until the date the Secretary of Health and Human Services ... has completed action on the application submitted ... with respect to that written notice of intent.

. . . .

(4)(B) Surplus property for which an application has been approved shall be assigned promptly to the Secretary of Health and Human Services for disposition in accordance with and subject to subsection (f) of this section.

42 U.S.C.A. § 11411(d) (West 1992). These provisions imply that surplus property *is* normally "available for ... other purpose[s]"—that GSA can normally exercise its disposal options outside of the McKinney Act[4]—once HHS has "completed action on the application" and such action falls short of a full approval for "assignment." The legislative history supports this interpretation. *See* H.R. CONF. REP. No. 951, 101st Cong., 2d Sess. 97–101 (1990); S.REP. No. 458, 101st Cong., 2d Sess. 3–9 (1990).

Thus, we have no basis to find that GSA *must* "hold" unassigned surplus property for a wholly unfunded, otherwise acceptable § 501 applicant, once HHS has given qualified approval to the application; in-

---

**4.** *See, e.g.,* 40 U.S.C. § 484(e) (1988) (disposal by competitive bidding); 41 C.F.R. § 101–47.4905 (1991) (listing statutes authorizing disposal of surplus property to public agencies). We need not decide whether every disposal option outside of the McKinney Act is normally available

deed, appellees do not urge this result. On the other hand, we do not decide whether this kind of an arrangement might be legal. The parties have not addressed this issue, and we do not resolve it.

### III. CONCLUSION

The Enforcement Decisions are affirmed.

to GSA once HHS has completed action on all timely-filed § 501 applications and no applicant meets the criteria for "assignment." At a minimum, some such options are normally available to GSA.