107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES CABLE PARTNERS, L.P., a Delaware Limited Parntership
d/b/a Big South Fork Cablevision, Plaintiff-Appellant,
v.
The CITY OF JAMESTOWN, TENNESSEE, being represented by its
Mayor, Gwenith DUNCAN, and its Aldermen, Bob Bow,
Harold Whitehead, Jay Wendell
Peavyhouse, Mark Choate, and
Gene Holt, Defendant-Appellee.
 No. 95-6359.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1997.
 
 Before: KENNEDY, NELSON, and GODBOLD*, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff James Cable Partners, L.P. appeals the partial denial by the District Court of its motion to enforce a prior injunction against defendant City of Jamestown relating to the cable franchise of plaintiff. Plaintiff alleges that the District Court improperly refused to order defendant to remove its entire cable television system. For the following reasons, we AFFIRM in part and REVERSE in part the order of the District Court. Although we find that the District Court did not abuse its discretion in refusing to require defendant to remove its entire system, we also find that it abused its discretion in not requiring defendant to correct additional situations, namely removing its wires or cable when they interfere or make more difficult plaintiff's raising its wires in order to comply with either the National Electric Safety Code ("NESC") or requests by the electric and telephone companies which maintain wires on the poles at issue. We similarly find that it was an abuse of discretion not to require defendant to correct any situation in which the placement of its wires violates NESC spacing requirements and consequently risks affecting the system of plaintiff through potential arcing. We therefore remand this case for the addition of these situations to the court's order.
 
 I. Facts
 
 2
 Plaintiff is a limited partnership which operates a cable television system in Jamestown, Tennessee, the defendant. Defendant had awarded by ordinance a cable television franchise for the city of Jamestown in 1977 to the predecessor of plaintiff, which in turn assigned the franchise and sold the cable system to plaintiff in 1988. The cable franchise entitled its owner to "the exclusive right to erect, maintain, operate and utilize facilities for the operation of communications systems and additions thereto in the streets of the City for a period of 25 years...." Defendant consented to the assignment to plaintiff of the franchise in return for a promise from plaintiff to tender an annual payment of five percent of the gross revenues derived from the franchise.
 
 
 3
 In January, 1990, defendant granted itself a cable franchise, installed a parallel system of lines, and began to operate a competing cable system. Plaintiff soon filed a lawsuit in Tennessee state court seeking a declaratory judgment that defendant had breached the exclusivity provision of the franchise agreement. Eventually, the Tennessee Court of Appeals held that the franchise of plaintiff was valid, thereby rejecting the claim by defendant that the franchise should be rescinded due to failure of consideration because the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 et seq., had preempted retroactively the right of defendant to regulate rates. See James Cable Partners, L.P. v. City of Jamestown, 818 S.W.2d 338, 342-45 (Tenn.Ct.App.1991).
 
 
 4
 Upon remand, the state Chancery Court issued an order on January 21, 1992 which enjoined defendant from "erecting, maintaining, operating or utilizing facilities for the operation of cable television or other such communications systems contrary to plaintiff's franchise for the remaining term of plaintiff's franchise to operate such systems." Although defendant thereafter ceased operating its cable system, it did not remove the system. Plaintiff therefore appeared before the Chancery Court in March, 1992 and moved it to enjoin defendant to do so. The Chancery Court denied this request without explanation in an April 17, 1992 order.
 
 
 5
 On October 5, 1992, Congress enacted the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102-385, 106 Stat. 1460 (codified in scattered sections of 47 U.S.C.) ("1992 Cable Act"), which became effective on December 4, 1992. Because defendant intended to rely upon the 1992 Cable Act in order to resume operating its cable system, plaintiff filed the instant lawsuit in the District Court on November 9, 1992. Plaintiff sought a declaration that section 7(a) of the Cable Act, 42 U.S.C. § 541(a), did not apply retroactively and invalidate the exclusivity provision of the parties' franchise agreement. On April 7, 1993, the District Court issued an opinion in which it held that the Act is not retroactive. See James Cable Partners, L.P. v. City of Jamestown, Tenn., 822 F.Supp. 476 (M.D.Tenn.1993). The District Court further enjoined defendant "from competing with the plaintiff in a cable television system, from granting any other franchises, and from taking any other action which violates plaintiff's exclusive franchise." See id. at 479.[1] On January 5, 1995, this Court affirmed. See James Cable Partners, L.P. v. City of Jamestown, Tenn. by Duncan, 43 F.3d 277 (6th Cir.1995).
 
 
 6
 On June 23, 1995, plaintiff filed the instant motion for enforcement of the May 7, 1993 injunction. Plaintiff requested an injunction requiring defendant to dismantle its entire cable system. The District Court held a hearing on August 16, 1995, at which plaintiff introduced evidence that the cable system of defendant was deteriorating and therefore posing a public threat and interfering with the cable system of plaintiff.
 
 
 7
 The District Court issued an order on August 17, 1995 which granted the motion for enforcement in part. The order provided that defendant, when notified by plaintiff, had to correct any situation in which one of its wires had "bellywrapped" around a wire of plaintiff, or when one of its lashing wires had broken. Further, the order required defendant to install guy wires on any cable which defendant had cut near a pole, and to remove any of its equipment which rested on a supporting lashing wire of plaintiff. The order also provided that plaintiff could apply to the District Court for further relief if the parties could not agree as to whether defendant had violated the order.
 
 
 8
 A memorandum accompanying the order stated in part that, "[h]aving considered the briefs and arguments of the parties, the court will not require Jamestown to remove its entire cable system from the city streets." The District Court did not explain with specificity whether it had reached this conclusion because it had found that the continued presence of defendant's cable system did not violate the franchise agreement, or, because it instead had found that defendant's cable system did violate the agreement but that plaintiff nonetheless was not entitled to the particular relief of its removal. The District Court did state the following:
 
 
 9
 Jamestown's noncompliance [with national safety codes], however, does not violate the injunction unless plaintiff demonstrates how it directly interferes with plaintiff's exclusive franchise rights. Mr. Michael Adams, general manager of James Cable Partners, submitted an affidavit and testified at the hearing. With the use of photographs, he explained specific defects in Jamestown's cable system that directly impair plaintiff's ability to maintain its own system.
 
 
 10
 See August 17, 1995 Memorandum, p. 2 (Joint Appendix at 146).
 
 
 11
 Plaintiff has filed a timely appeal of the August 17, 1995 order of the District Court, contesting it to the extent that it failed to require defendant to remove its entire cable system.
 
 II. Analysis
 
 12
 Plaintiff asserts that the District Court was required as a matter of law to enforce its April 7, 1993 injunction by ordering defendant to remove its entire cable television system. Plaintiff stresses that the April 7, 1993 injunction forbids defendant from "taking any other action which violates plaintiff's exclusive franchise," and that the underlying franchise agreement provides that plaintiff has the exclusive right to erect and maintain a cable system in Jamestown (emphasis added). Plaintiff argues that the District Court incorrectly construed the franchise agreement by determining that the continued presence of the cable system of defendant does not constitute a breach of the agreement. Plaintiff further claims that we must review de novo the ruling of the District Court because it is based upon a question of contract interpretation, which generally is an issue of law in the Sixth Circuit. See, e.g., Golden v. Kelsey-Hays Co., 73 F.3d 648, 653 (6th Cir.), cert. denied, 117 S.Ct. 49 (1996).
 
 
 13
 As noted, it is not entirely clear whether the District Court found that the continued existence of defendant's non-operating cable system constitutes a breach of the franchise agreement. Even assuming, however, that the system is a breach, and that the District Court erroneously found otherwise, we will not disturb the ruling below to the extent that the District Court refused to require defendant to remove its entire cable system. This appeal concerns the particular remedy to which plaintiff is entitled, and the District Court ultimately was correct that neither its injunction nor the franchise agreement gives plaintiff the absolute right to compel defendant to remove its cable system. Nonetheless, we also hold that a consistent application of the approach adopted by the District Court further requires defendant to correct any situation in which the City's wires either (1) prevent plaintiff from raising its wires in order to comply with the NESC or requests by other companies, or (2) risk affecting the system of plaintiff through arcing because they are in violation of NESC spacing requirements.
 
 
 14
 Under Tennessee law, a trial court has discretion when deciding whether to grant a mandatory injunction. Association of Owners of Regency Park Condominiums v. Thomasson, 878 S.W.2d 560, 566 (Tenn.Ct.App.1994). Further, "[i]t is a general rule that a mandatory injunction will not be granted except in extreme cases and when courts of law are unable to afford adequate redress, or when the injuries complained of cannot be compensated in damages." Smith v. Rodgers, 677 S.W.2d 1, 3 (Tenn.Ct.App.1984); see also National Law Ctr. v. United States Veterans Admin., 765 F.Supp. 1, 6 (D.D.C.1991) (under federal law, order enforcing prior injunction must be "narrowly tailored to remedy the specific harm shown") (quoting Aviation Consumer Action Project v. Washburn, 535 F.2d 101, 108 (D.C.Cir.1976)), aff'd, 964 F.2d 1210 (D.C.Cir.1992); c.f. RESTATEMENT (FIRST) OF PROPERTY § 563 (1944) (doctrine of relative hardship provides that an injunction "against violation of the obligation arising out of a promise respecting the use of land will be denied if the harm done by granting the injunction will be disproportionate to the benefit secured thereby").
 
 
 15
 Neither the injunction nor the franchise agreement at issue explicitly provides that plaintiff has the right to require the removal of another's inoperative cable system once it is built. Indeed, the District Court issued its injunction after defendant already had built its system; if the District Court had intended to take the dramatic step of requiring defendant to remove the system, the injunction presumably would have provided so explicitly. By requiring defendant to correct specific situations in which its equipment interferes with the actual ability of plaintiff to operate its system, the District Court granted relief which seeks to avoid inflicting great costs upon defendant while simultaneously protecting the ability of plaintiff to derive the benefits of its franchise agreement. Finally, the franchise agreement will terminate in the year 2002. The possibility that defendant may wish to operate its own system at that time is a factor the court could consider in weighing the equities.
 
 
 16
 The law of Tennessee permits the approach adopted by the District Court. For example, in Jones v. Morrison, 458 S.W.2d 434 (Tenn.Ct.App.1970), the Tennessee Court of Appeals upheld a grant of punitive damages against a defendant who, during a boundary dispute, had built a structure which encroached upon the property of the plaintiff without first receiving court permission. The Jones court noted that it previously had reversed the issuance by the trial court of a mandatory injunction which had required the defendant to remove the building. See id. at 435-46. The Jones court explained that this prior reversal was due both to the slowness of the plaintiff in bringing his complaint and also to the desire of the court "to apply a more equitable and realistic remedy on the question of damages as against the rather harsh and extreme remedy of requiring a large and expensive building to be torn away." See id. at 439; see also Cross v. McCurry, 859 S.W.2d 349, 354 (Tenn.Ct.App.1993) (upholding denial of mandatory injunction which required defendant to remove structure encroaching on property of plaintiff); Smith, 677 S.W.2d at 4 (reversing issuance of mandatory injunction which required defendant to remove a bank of dirt which retained fill and encroached on land of plaintiff).
 
 
 17
 Although the District Court did not abuse its discretion by granting relief only in specific instances in which defendant is impairing the actual ability of plaintiff to operate, we further find that the District Court did abuse its discretion by failing to apply its own methodology to every problem identified by plaintiff. The record shows that the location of some of defendant's cables prevent plaintiff from raising its own cables in order to comply with either the height requirements of the NESC or requests by other companies which also operate wire systems. The record also shows that defendant has placed some of its cables in violation of NESC spacing requirements, and that these cables, such as those improperly close to power sources, may undermine the system of plaintiff through arcing. Because these problems constitute specific instances in which defendant is interfering with the ability of plaintiff to operate, they are no different than the problems which the District Court did order defendant to correct. The District Court therefore should have ordered defendant to correct these situations as well when issuing its order.
 
 
 18
 Accordingly, we AFFIRM in part, REVERSE in part, and remand for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Plaintiff asserts, and defendant does not contest, that before the District Court issued its opinion, defendant invoked the 1992 Cable Act in order to convince the state Chancery Court to dissolve the injunction entered by that court on January 21, 1992