**JAMES CABLE PARTNERS, L.P., a Delaware limited partnership doing business as Big South Fork Cablevision**

v.

**The CITY OF JAMESTOWN, TENNESSEE, being represented by its Mayor, Stoney C. Duncan, and its aldermen, Bob Bow, Mark Choate, Gary Huff, Harold Whitehead, and Donald Crockett.**

No. 2:92–0084.

United States District Court,
M.D. Tennessee,
Northeastern Division.

April 7, 1993.

Ernest A. Petroff and T. Leslie Dooley, of Baker, Worthington, Crossley, Stansberry & Woolf, Huntsville, TN, Burt A. Braverman, Cole, Raywid & Braverman, Attys., Washington, DC, for plaintiff.

Michael Anthony Walker, Jamestown, TN, for defendants.

### MEMORANDUM

MORTON, Senior District Judge.

The plaintiff, James Cable Partners ("James Cable"), filed this suit for a declaration of its rights and to enjoin the defendant City of Jamestown, Tennessee ("Jamestown") from operating a competing cable service within the City of Jamestown. James Cable alleges that the defendant City of Jamestown granted it a twenty-five year exclusive franchise. Jamestown counters that section 7(a) of the 1992 Cable Act[1] retroactively rescinds the franchise's exclusivity and nullifies a Tennessee court judgment that Jamestown could not operate a competing cable system. Jamestown filed an answer and a counterclaim seeking a determination that the 1992 Act is retroactive, and, in effect, permits it to operate a competing cable system. All the facts are stipulated and the parties have filed motions for summary judgment.

The stipulated facts are:

1. Pub.L. No. 102–385, 106 Stat. 1503 (1992) (to  be codified at 47 U.S.C. § 541 et seq.).

1. James Cable Partners, L.P., is a duly organized and valid existing limited partnership doing business in Fentress County, Tennessee.

2. James Cable has been engaged in the operation of a cable television system in the City of Jamestown, Fentress County, Tennessee, since June 1988.

3. Jamestown, Tennessee, is an existing Tennessee municipal corporation. Stoney Duncan is its mayor. Bob Bow, Harold Whitehead, Donald Crockett, Mark Choate, and Gary Huff are its aldermen.

4. On March 14, 1977, the city's mayor and aldermen approved Ordinance 1–3–1–77 ("the franchise"). Appendix, ex. 1.

5. The franchise was ultimately assigned to James Cable pursuant to a Memorandum Agreement approved by the city on June 13, 1988, and accepted by James Cable on June 30, 1988. Appendix, ex. 2.

6. On January 8, 1990, Jamestown granted itself a franchise to operate a cable television system. Appendix, ex. 3.

7. The Tennessee State Legislature enacted a Private Act relating to the Jamestown Cable Television business. Appendix, ex. 4.

8. Jamestown constructed, installed, and operated a cable television system that parallelled or "overbuilt" the James Cable system.

9. The city operated its cable television system in competition with the James Cable system.

10. On January 8, 1990, before Jamestown built its system, James Cable filed suit in the Chancery Court for Fentress County for declaratory judgment that Jamestown had breached the exclusivity provision of the franchise. *James Cable Partners, L.P., v. City of Jamestown,* No. 90–3. Appendix, ex. 5.

11. Judgment in the Chancery Court was entered May 25, 1990. Appendix, ex. 6.

12. On appeal, the Tennessee Court of Appeals reversed. 818 S.W.2d 338 (Tenn.Ct. App.1991).

13. The Tennessee Supreme Court denied the city permission to appeal June 24, 1991. Appendix, ex. 7.

14. The U.S. Supreme Court denied the city's petition for writ of certiorari January 13, 1992, 502 U.S. ——, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992).

15. On January 21, 1992, the Chancery Court granted an injunction against the city. Appendix, ex. 8.

16. On April 17, 1992, the Chancery Court denied a petition of James Cable for further relief. Appendix, ex. 9.

17. The city is not currently operating a cable system in Jamestown. The city has not removed its cable television plant and equipment.

18. On October 5, 1992, the United States Congress enacted the Cable Television Consumer Protection and Competition Act of 1992 ("1992 Cable Act"), Pub.L. No. 102–385, 106 Stat. 1460. With the exception of certain provisions of the legislation not relevant here, the 1992 Cable Act became effective on December 4, 1992. *Id.* § 28, 106 Stat. 1503 (to be codified at 47 U.S.C. § 325 note).

The parties further stipulate without objection that the City of Jamestown intends to activate its cable system on the theory that the congressional enactment is retroactive and permits the operation of more than one cable television system.

Section 7(a) of the 1992 Cable Act provides:

> The franchising authority may award, in accordance with the provisions of this subchapter, one or more franchises within its jurisdiction; except that a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise.

To put this controversy in context, it is helpful to quote from an article published in the UCLA School of Law Federal Communications Law Journal, which sets forth the history of cable television regulation as follows:

> Historically, cable television has been subject to an almost constant ebb and flow of regulatory power within the hierarchy of

federal, state and local government. Regulators and courts have tried to classify cable within the established regulatory structure originally designed for broadcasting or common carriers. The underlying policy justification for regulation has been similarly diverse and often inconsistent, ranging from cable television's competitive threat to established media to cable's technological potential to help build a brave new world. Prior to the passage of the Cable Act of 1984, no fully satisfactory method of regulation or division of authority had arisen. Cable television seemed to be caught in a regulatory void that shifted with political winds and inadequate regulatory schemes, thus locking the cable industry and related groups into a seemingly never ending state of uncertainty.

By the time cable television had developed to the point of attracting attention from the FCC, a federal scheme for broadcast television regulations was already firmly in place. Due to the inertia that attached to the established broadcast regulatory assumptions, the Federal Communications Commission attempted to squeeze cable into the existing broadcast regulatory structure, rather than treat it as a separate, distinct communications medium. *Cable Television and the Allocation of Regulatory Power: A Study of Governmental Demarcation and Rules,* 44 Fed.Com.L.J. 1, 6 (1991).

The Communications Policy Act of 1984 was the first concerted effort to treat cable television as a separate medium. However, the FCC had previously exercised its rulemaking authority in some fields, one of which was a limitation of terms for granting a cable franchise. In 1972, the FCC promulgated a regulation that limited cable franchises to fifteen years. 47 CFR § 76.31. Although the franchise sub judice is for twenty-five years, the fifteen-year franchise term limita-

tion set forth in former § 76.31(a)(3) of the Commission's rules did not apply because by the time the franchise was granted, the FCC had relaxed the requirement and ultimately rescinded it.[2]

Since James Cable's franchise was granted after the Commission stayed its fifteen-year term regulation, § 76.31(a)(3) did not affect the duration of James Cable's franchise. However, it is clear that by 1972, the FCC had asserted its rulemaking preemptive power over all the state actions in regulating the cable industry; its term regulation served as notice to the cable industry that it was subject to the potential exercise of preemptive federal authority.

In 1992, by passing the 1992 Cable Act, Congress exercised its right of preemptive federal authority over the cable television system and included the section at issue here. It seems clear that Congress could have made the statute retroactive if it wished, but the question is, did it do so?

Neither the terms of the statute nor its legislative history indicate any intent on the part of Congress to make the statute retroactive. Since retroactivity is not favored in the law, the general rule is that congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires it. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493, 500 (1988). Consequently, this court is compelled to find that the statute has no retroactive effect, although it could have done so without constituting "a taking" as asserted by the plaintiffs.[3] Therefore, this court holds that the exclusive franchise agreement granted by the City of Jamestown, Tennessee, pursuant to Tennessee statute, falls within the void created by the inaction of Congress, and it is therefore valid, effective, and enforceable. Accordingly, the

---

**2.** In 1976, the Commission stayed until March 31, 1978, the requirements of §§ 76.11 and 76.13 which provided that new or existing uncertified cable systems must obtain franchises conforming to the standards of § 76.31(a) and must submit them as part of their certificate applications. On September 30, 1977, the FCC released a report and order formally eliminating the franchise du-

ration requirements effective November 15, 1977.

**3.** This is so because the FCC's conduct put the industry on notice of its potential exercise of regulatory power; those who took a cable franchise should reasonably have considered its effect upon the value of the franchise.

court will enjoin the City of Jamestown from competing in a cable television system contrary to the original exclusive franchise it granted the plaintiff. An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, the City of Jamestown is hereby enjoined until March 14, 2002, from competing with the plaintiff in a cable television system, from granting any other franchises, and from taking any other action which violates plaintiff's exclusive franchise.

It is so ORDERED.

### APPENDIX

### EXHIBIT 1

### ORDINANCE NO: __I__

GRANTING TO CLARENCE R. HARDING AND OTHERS, DBA FENTRESS COUNTY CABLE TELEVISION. THE RIGHT TO ERECT, MAINTAIN, AND OPERATE COMMUNICATIONS SYSTEMS IN THE STREETS, HIGHWAYS, AND OTHER PUBLIC PLACES IN THE CITY OF JAMESTOWN, TENNESSEE, FOR THE RECEPTION, TRANSMISSION AND DISTRIBUTION OF TELEVISION AND OTHER SIGNALS TO THE INHABITANTS OF SAID CITY, AND OTHER PURPOSES, FOR A PERIOD OF 25 YEARS.

BE IT ORDAINED BY THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF JAMESTOWN, TENNESSEE.

*SECTION 1.* CLARENCE R. HARDING & OTHERS, dba FENTRESS COUNTY CABLE TELEVISION, hereinafter referred to as "company", is hereby granted the exclusive right to erect, maintain, operate and utilize facilities for the operation of communications systems and additions thereto, in the streets of the City for a period of 25 years, in accordance with the applicable laws and regulations of the United States of America and the State of Tennessee, and the Charter, regulatory ordinances and regulations of the City.

The term "communications systems" whenever used in this ordinance, includes community antenna television and the receipt, transmission and distribution of voices, sounds, writings, signals, pictures, visions, images, or any type of closed circuit transmission or signal transmission by means of electrical impulses.

*SECTION 2.* (a) Whenever the term "streets" is used in this ordinance, it shall be deemed to include and duly dedicated streets, highways, lanes, avenues, sidewalks, alleys, bridges, boulevards, or other public places in the City including utility easements, provided any necessary permissions are obtained from affected property owners.

(b) Whenever the term "in" is used in this ordinance with respect to streets, it shall be deemed to refer to and include the terms in, under, above, along, across or upon such streets.

(c) Whenever the term "City" is used in this ordinance, it shall mean the City of Jamestown and all subsequent additions thereto.

*SECTION 3.* The Company shall, where agreement can be reached with the owners, use existing poles, towers or other facilities wherever possible, and it shall be the sole responsibility of the Company to negotiate and enter into any and all contracts with the owner of such facilities to secure the necessary space thereon or therein for its operation under this ordinance. It is the stated intention of the City that the number of new or additional poles constructed by the Company under the provisions of this ordinance be kept at a minimum; and to the extent necessary to carry out this intention, the Company upon securing such agreement with other holders of public permits and franchises is hereby granted the right to use such existing poles, towers, and other facilities. Whenever and wherever existing poles, towers, etc. are not suitable, or cannot reasonably be made suitable for the attachment of the Company's facilities thereto, the Company shall install its facilities underground. However, if this is not feasible, Company may be given permission by the City to erect its own poles, towers, etc. In the event that

it fails to secure such permission after proper business, therefor, Company shall not be required to furnish service to such areas. Whenever poles owned by telephone or power companies are eliminated and these companies install their services underground. However, if this is not technologically feasible, Company will not be required to supply services to such areas. Whenever Company is unable to reach an agreement with the owners of existing poles, towers or other facilities, the Company is to install its facilities underground. On all Company owned poles the City will be permitted to place fire alarms, traffic and street lights, and police phones. Except for companies furnishing the same or similar services, the Company shall permit any utility or holders of public permits or franchises for the use of streets for the erection of poles and pole line facilities, by appropriate contract or agreement negotiated by the parties, to use any and all facilities constructed or erected in the streets by the Company. All said agreements and installations shall be subject to all existing and future regulatory ordinances of the City.

It is understood and agreed that this ordinance shall be automatically revoked and repealed, and shall become null and void if the Company fails, within twelve (12) months of the passage of this ordinance, to secure and execute binding, bona-fide contracts for the joint use of poles with the Volunteer Electric Cooperative and/or Twin Lakes Telephone Cooperative, Inc.

*SECTION 4.* To the extent that the Company is unable to contract with the owners and use existing poles, towers and other facilities, it shall construct its facilities underground. In areas where there are no existing poles which may be used by Company, it may erect such poles, towers and other facilities as may be required. The erection of poles, wires, or underground facilities shall be subject to all existing and future ordinances and regulations of the City applicable thereto.

The Company's poles, wires, underground facilities and appurtanances shall be located, erected and maintained so as not to endanger the lives of persons, or to interfere with street improvements the City may deem proper to make, or with facilities of present franchise holders, or to unnecessarily hinder, or obstruct the free use of the streets. Removal of poles or equipment when necessary to avoid such interference will be at the Company's expense.

Construction and maintenance of the communications system shall be in accordance with the provisions of applicable ordinances of the City affecting electrical installations.

All installations of equipment shall be durable and installed in accordance with good engineering practice, and of sufficient height to comply with all existing ordinances, City Regulations and State Laws so as not to interfere unduly with the right of the public or individual property owner.

*SECTION 5.* In the maintenance and operation of its communications systems in the streets, and in the course of any new construction or addition to its facilities, the Company shall proceed so as to cause the least possible inconvenience to the general public, and shall not unduly obstruct the streets, impede traffic or interfere with travel by the public.

The Company shall not make or cause to be made any opening or obstruction in the streets without first having obtained the permission of the proper city authorities. All such openings or obstructions will be repaired by Company to the satisfaction of the City.

*SECTION 6.* The Company shall indemnify, protect and save harmless the City from any and all loss or damage arising out of, or claims for injury or death to any person or person, or damage to any property incurred by or asserted against the City, directly or indirectly, by reason of the operations of the Company and the grant herein authorized.

The Company shall carry insurance, to protect the parties hereto from and against all claims, demands, actions, judgments, costs, expenses, and liabilities which may arise or result, directly or indirectly, from, or by reason of, such loss, injury or damage. The amounts of such insurance against liability due to physical damages to property shall not be less than Twenty Five Thousand

($25,000) Dollars, as to any one accident, and not less than One Hundred Thousand ($100,-000) Dollars aggregate in any single policy year; and against liability due to bodily injury or to death of persons, not.less than Fifty Thousand ($50,000) Dollars as to any one person and not less than One Hundred Thousand ($100,000) Dollars as to any one accident. All insurance required by this ordinance shall be and remain in full force and effect for the entire life of this ordinance. Said policy or policies of insurance or a certified copy or copies thereof shall be approved by the City Attorney and be deposited with and kept on file in the office of the City Recorder.

*SECTION 7.* The Company shall furnish a bond to the City in the amount of Ten Thousand ($10,000) Dollars in such form and with such sureties as shall be acceptable to the City, guaranteeing the faithful performance of all of the obligations of the Company under the terms of this ordinance.

The Company's performance of its obligations under this ordinance shall be conditioned upon the Company receiving such licenses or grants as may be necessary to the performance of this ordinance, from duly constituted agencies of the Federal Government or the State of Tennessee, with licenses or grants the Company agrees to attempt to obtain without undue delay.

*SECTION 8.* Installation and maintenance shall be such that no interference is caused to existing communications systems and so as not to distort or interfere with direct-off-the-air television signals.

*SECTION 9.* The Company shall remove or relocate at its own expense any poles, towers and related facilities installed or maintained by the Company under this ordinance, if said removal or relocation is necessitated by change of grade, alignment or width of any street.

*SECTION 10.* The charges by the Company shall be fair and reasonable, and exclusive of any tax or taxes which may be assessable against the scheduled installations or services, shall initially be as follows:

Charge for the standard initial attachment shall be a maximum of $30.00 for the first outlet, and $5.00 maximum for each additional connection, not exceeding three such additional connections. Charge for monthly transmission service shall be not more than $10.00 per month for the first television receiving set and $1.00 per month for each additional television receiving set, not exceeding three such additional television receiving sets. Provided that in installations requiring extension of cable or facilities in excess of the ordinary and customary requirements, or requiring additional connections in excess of three such additional connections, charges shall be negotiated between the Company and the subscriber.

No changes in the rates or charges shall be made by Company without the approval of City. The City shall be notified at least thirty (30) days prior to any proposed change of rates or charges. An explanation for the reason for making said change shall accompany such notice or shall be made-to-the Mayor and Board of Aldermen at the time of notification. The Company shall have the right to make rules and regulations governing its services, not inconsistent with the terms hereof or applicable regulations.

*SECTION 11.* The City reserves the right to revoke the rights herein granted if the Company fails, after reasonable notice, to comply with the conditions, provisions or regulations under this ordinance.

The Company, at any time during the effective period of this ordinance, may terminate its agreement hereunder upon giving the City ninety (90) days written notice of such termination. The Company shall pay the City, within thirty (30) days of the effective date of such termination, all sums due to the City under the provisions of this ordinance.

The Company shall remove all poles, towers and related facilities herein authorized and shall restore the property in as good condition for public use as the abutting portions thereof at the Company's own cost and expense within (90) days after the expiration, termination, or revocation of this ordinance.

SECTION 12. The rights and privileges herein granted shall not be assignable nor transferable in any bankruptcy proceedings, trusteeship, receivership or by operation of any law, and in the event of such assignment or transfer, this grant shall terminate forthwith, nor shall said company sell, lease, assign, or otherwise alienate this grant or any privilege hereunder with the prior approval of the Board of Mayor and Aldermen.

SECTION 13. Installation of the system shall be commenced within one (1) year from the acceptance by Company under Paragraph 17 of this ordinance. Construction, extensions, and provision of service shall be pursued by the Company with due diligence thereafter. Failure to commence and provide service within two (2) years after the effective date of this ordinance shall be grounds for termination of the rights granted under this ordinance; provided, however, that the Company having negotiated with the owners of utility poles, attachment facilities and rights-of-way with promptness and diligence and in good faith shall not be held in default of the ordinance if construction and provision of service are prevented by any condition beyond the control of the Company.

SECTION 14. Within sixty (60) days following passage of this ordinance on third reading, the Company shall file with the City Recorder, for attachment hereto, copies of pole use contracts referred to in Section 3 hereof.

SECTION 15. This ordinance shall take effect upon the filing of the contracts as required by Section 14, and shall be in force thereafter from and after the earliest period allowed by law.

SECTION 16. Within thirty (30) days from the effective date of this ordinance, the Company shall file its written acceptance thereof with the City Recorder. Upon its acceptance by the Company, this ordinance shall constitute a contract between the City and the Company and shall be binding upon both.

SECTION 17. Company shall maintain a local office which will be open during the normal local business hours.

SECTION 18. The right is hereby reserved to the City to adopt, in addition to the provisions herein contained and existing applicable ordinances, such additional regulations as it shall find necessary in the exercise of the police power, provided that such regulations, by ordinance or otherwise, shall be reasonable, and not in conflict with the laws of the State of Tennessee.

SECTION 19. If required, the City of Jamestown and the Company may alter this agreement by an amendment, provided it is mutually agreed to by the parties hereto.

SECTION 20. If any section, sentence, clause or phase of the ordinance is for any reason held illegal, invalid, or unconstitutional, such invalidity shall not affect the validity of the ordinance and any portions in conflict are hereby repealed.

PASSED AND APPROVED by the Mayor and Board of Aldermen on this, the 14th day of March, 1977.

/s/ [Signature]
Mayor

ATTEST:

[Signature]

City Recorder

Passed on 1st. reading Feb. 10, 1977

Passed on 2nd. reading March 14, 1977

## APPENDIX

## EXHIBIT 2

## MEMORANDUM OF AGREEMENT

This Agreement made and entered into to be effective upon its execution by both parties by and between THE CITY OF JAMESTOWN, TENNESSEE, a municipal corporation, as one party, referred to herein as the "City", and JAMES CABLE PARTNERS, L.P., a Delaware Limited Partnership headquartered in Bloomfield Hills, Michigan, as the other party, referred to herein as "James".

## RECITALS

On March 14, 1977, the City adopted a Franchise Ordinance referred to herein as the "Franchise" granting a franchise to con-

struct and operate a cable television system in the City. The Franchise was duly transferred to First Rock–Paradigm Cablevision 85–1, Limited Partnership, referred to herein as "Paradigm".

Paradigm wishes to assign the Franchise to James and the City has agreed, and on June 13, 1988 the City approved·a proper Resolution to authorize the Mayor of the City to execute this consent to the assignment subject to the agreement of James the franchise fee be increased to five percent (5%) of the gross revenues per year from all cable services.

## WITNESSETH

In consideration of the premises and of the consent to assignment by the City and the agreement by James to increase the franchise fee, parties agree as follows:

1. The City hereby consents to the assignment, sale and transfer by Paradigm of all of its right, title and interest in the Franchise to James.

2. The City further consents to the assignment, mortgage or pledge by James of the Franchise and James's rights thereunder as collateral security for loans obtained by James to purchase and/or operate the cable television system. Any secured party or mortgagee shall have the same rights as James to cure any defaults under the Franchise.

3. The City confirms Paradigm is the current, lawful holder of the Franchise and that the Franchise was duly issued and is currently in full force and effect according to its terms. There exists no default or violation of the Franchise and no event has occurred that, except for the failure to give notice or the passage of time or both, would lead to a default. The City has made no investigation whether Paradigm has encumbered the Franchise and makes no representations as to its merchantability in that regard.

4. As between the parties, all other provisions, terms and conditions set forth in the Franchise shall and do remain valid and in full force and effect.

5. As a consideration for the approval by the City given to James, James agrees upon the transfer of the Franchise the Franchise Fee shall be increased to five percent (5%) of the gross revenues per year from all cable services, and James agrees the Franchise Ordinance be amended to provide such Franchise fee.

6. The right of assignment granted by the City to James shall be effective upon the full execution of this agreement. The right granted by James to the City to increase the Franchise fee shall become effective upon the closing of the transfer by Paradigm of the Franchise to James.

Approved by the City on the 13th day of June, 1988.

/s/ James H. Qualls
James H. Qualls
Mayor

ATTEST:

/s/ Grace Choate

Grace Choate

City Recorder

ACCEPTED AND AGREED TO BY JAMES ON THE 30 DAY OF JUNE, 1988.

JAMES CABLE PARTNERS, L.P.

By:[Signature]

## APPENDIX

## EXHIBIT 3

*Section 1.* The City of Jamestown is hereby granted a franchise to purchase, acquire, construct, own, operate, maintain, extend, improve, repair, equip, and dispose of a community antenna television system or microwave multi-point distribution system, or both, for the benefit of the citizens of the City. The City may operate such system as a department or part of a department of the City or place its operation in a separate board, as provided by Ordinance.

*Section 2.* The City is granted all of the franchise rights adopted by Ordinance of March 1, 1977 in the Grant of Franchise to Clarence R. Harding and others doing business as Fentress County Cable Television, as such other Franchise Ordinance has, from

time to time, been amended, which Ordinance, as amended, is incorporated herein as if set out verbatim.

*Section 3.* The City of Jamestown is authorized and empowered to borrow money to purchase, acquire, construct, extend, improve, repair, or equip any such system, and to issue its bonds or notes therefor, including refunding bonds, in such form and upon such terms as it may determine. Any such bonds or notes shall be issued pursuant to the procedures set forth in and shall be governed by the provisions Tennessee Code Annotated, Title 9, Chapter 21, including provisions dealing with covenants permitted in bond resolutions, security and remedies of bondholders, and the system hereinabove described shall be deemed to be a "public works project", as that term is defined in Title 9, Chapter 21, Tennessee Code Annotated.

Adopted and approved this 8th day of January, 1990.

CITY OF JAMESTOWN,
TENNESSEE
BY: [Signature]
MAYOR

ATTEST:

/s/ Grace Choate

Recorder

ORDINANCE OF THE CITY OF
JAMESTOWN, TENNESSEE

Filed Jan. 08, 1993

The Board of Mayor and Aldermen of the City of Jamestown, Tennessee, met in the regular session at the City Hall in Jamestown the 8th day of January, 1990, at which time there were present:

Harold Whited

Bob Bow

Cain Choate

Mark Choate

Cordis Tauber

There were absent:

None

Grace Choate, the City Recorder, was also present.

The following ordinance was introduced by /s/Bob Bow, seconded by /s/Harold Whited and after due deliberation, was adopted by the following vote:

AYE:

/s/Harold Whited

/s/Bob Bow

/s/Cain Choate

/s/Mark Choate

/s/Cordis Tauber

NAY:

None

AN ORDINANCE CREATING AND ESTABLISHING A CABLE TELEVISION FRANCHISE FOR THE CITY OF JAMESTOWN, TENNESSEE, AND AUTHORIZING THE INSTALLATION OF SUCH SYSTEM.

WHEREAS, the City of Jamestown is duly incorporated pursuant to Chapter 31 of the 1920 Private Acts of the State of Tennessee, as amended; and

WHEREAS, it is necessary and advisable to establish a franchise for the City of Jamestown, Tennessee, to provide cable television service for the benefit of the citizens of the City; and

WHEREAS, the Mayor and Board of Aldermen have determined such a public works project is economically feasible.

NOW, THEREFORE, BE IT RESOLVED by the Board of Mayor and Aldermen of the City of Jamestown, Tennessee, as follows:

STATE OF TENNESSEE

COUNTY OF FENTRESS

I, Grace Choate, hereby certify that I am the duly qualified and acting Recorder of the City of Jamestown, Tennessee, and as such official I further testify that attached hereto is a copy of excerpts from the minutes of a regular meeting of the Governing Body of that municipality held on January 8, 1990; these minutes were promptly and fully recorded and are open to public inspection; I have compared said copy with the original minute record of said meeting in my official custody; said copy is a true, correct and complete transcript insofar as the original

record relates to the Cable Television Franchise Resolution of the City.

WITNESS my official signature and the seal of the City, this 8th day of January, 1990.

/s/ Grace Choate
Recorder

(SEAL)

Adopted on 2nd reading January 8, 1990

APPENDIX
EXHIBIT 4

FILED
U.S. DISTRICT COURT
MID.... DISTRICT OF T
JAN 08 '93
DEPUTY CLERK

filed: Exhibit # ____ in
Case # 90.3 The 16 day
of _____ 19 90
Mary W. Taylor, Clerk & Master

*State of Tennessee*

**Department of State**

To all to whom these Presents shall come, Greeting:

I, Bryant Millsaps, Secretary of State of the State of Tennessee, do hereby certify that the annexed is a true copy of

PRIVATE CHAPTER NO. 138

HOUSE BILL NO. 2174

PRIVATE ACTS OF 1990

the original of which is now on file and a matter of record in this office.

In Testimony Whereof, I have hereunto subscribed my Official Signature and by order of the Governor affixed the Great Seal of the State of Tennessee at the Department in the City of Nashville, this 28th day of February , A.D. 19 90

_____
Secretary of State

# State of Tennessee

AN ACT relative to the charter of the City of Jamestown and to amend Chapter 54 of the Private Acts of 1959, as amended by Chapter 222 of the Private Acts of 1965, and any other acts amendatory thereto.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Article VII of Chapter 54 of the Private Acts of 1959, as amended by Chapter 222 of the Private Acts of 1965, and all other acts amendatory thereto, is amended by adding the following new Section:

Section ___.

(A) The board of mayor and aldermen of the City of Jamestown are authorized to establish and operate a cable television service within the confines of the City of Jamestown, Tennessee, and Fentress County, Tennessee, and to do and perform every act necessary and incidental thereto.

(B) The board of mayor and aldermen of such City of Jamestown are empowered to take and appropriate such lands and grounds, either within or without the limits of the City of Jamestown, as they may deem advisable, for the location and operation of such cable television service.

(C) The entire work, supervision, and control of the purchase, construction, operation, and maintenance of such cable television service shall be vested in the board of mayor and aldermen of the City of Jamestown. It shall be lawful for such board of mayor and aldermen to employ such subordinate officers, employees, agents, etc., as may be necessary to transact the business and do the work of constructing and operating such cable television service, and to delegate to such subordinate officers, employees, agents, etc., such authority and power as may be consistent with good business management. Such subordinate officers, employees, agents, etc., shall not have the right or authority to make any contracts binding upon such City of Jamestown unless they are expressly authorized to do so by ordinance duly passed by the board of mayor and aldermen of the City of Jamestown. The compensation to be paid to all such subordinate officers, employees, agents, etc., shall be fixed by ordinance which authorizes their appointment, and all such salaries or expenses shall be paid out of the funds or revenues herein provided for.

(D) The board of mayor and aldermen of the City of Jamestown shall have full power and authority by ordinance to make and enforce all reasonable rules and regulations from time to time for the control and

488

management of such cable television service, and to set rates for the use of the cable television service. The city shall have the right to enter upon the premises where cable television service is used or desired for the purpose of inspecting, repairing, installing, regulating, or terminating the use of such cable television service. The city shall have the right to terminate such service on the account of the nonpayment of rates. The city shall have the full power and authority to collect and enforce collections of all monies due for the use of such cable television service or otherwise arising out of the operation of such system.

(E)  The board of mayor and aldermen of the City of Jamestown shall have full power and authority to borrow money to purchase, acquire, construct, extend, improve, repair or equip any such system and issue its bonds or notes therefor, including refunding bonds, in such form and upon such terms as it may determine. Any such bonds or notes shall be issued pursuant to the procedures set forth in and shall be governed by the provisions of Tennessee Code Annotated, Title 9, Chapter 21, including provisions dealing with covenants permitted in bond resolutions, security and remedies of bondholders and the system hereinabove described shall be deemed to be a "public works project", as that term is defined in Title 9, Chapter 21, Tennessee Code Annotated.

SECTION 2. This act shall have no effect unless it is approved by a two-thirds (2/3) vote of the legislative body of the City of Jamestown. Its approval or nonapproval shall be proclaimed by the presiding officer of the city legislative body and certified by him to the Secretary of State.

SECTION 3. For the purpose of approving or rejecting the provisions of this act, it shall be effective upon becoming a law, the public welfare requiring it. For all other purposes, it shall become effective upon being approved as provided in Section 2.

HOUSE BILL NO. __2174__

PASSED: __FEBRUARY 19, 1990__

_____
ED MURRAY, SPEAKER
HOUSE OF REPRESENTATIVES

_____
JOHN S. WILDER
SPEAKER OF THE SENATE

APPROVED this __26th__ day of __February__ 1990

_____
NED McWHERTER, GOVERNOR

APPENDIX

EXHIBIT 5

In the Chancery Court for Fentress County, Tennessee

At Jamestown

James Cable Partners,

L.P., a Delaware limited

partnership doing business as

Big South Fork Cablevision

Plaintiff

VS.

The City of Jamestown, Tennessee

being represented by its Mayor,

Stoney C. Duncan, and its Alder-

men, Bob Bow, Harold Whitehead,

Cordis Taubert, Mark Choate and

Cain Choate

Defendant

No. 90–3

Filed Jan. 08, 1993

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes James Cable Partners, L.P., dba Big South Fork Cablevision, pursuant to TENNESSEE CODE ANNOTATED 29–14–101, *et seq.* and Rule 57 of the TENNESSEE RULES OF CIVIL PROCEDURE and petition this Honorable Court to declare the force and effect of certain real and substantial contract rights which are now in dispute between the parties hereto by showing the following:

1. Plaintiff, James Cable Partners, L.P., is a Delaware limited partnership doing business in Fentress County as Big South Fork Cablevision with its registered agent being the C.T. Systems Corporation, 530 Gay Street, Knoxville, Tennessee 37902. Plaintiff has been engaged in the operation of a cable television system in the City of Jamestown and Fentress County since June, 1988.

2. Defendant, the City of Jamestown, is a municipal corporation organized and existing under the laws of the State of Tennessee and is located in Fentress County, Tennessee, with its office at City Hall, P.O. Box 670, East Central Avenue, Jamestown, Tennessee 38556. The defendant is currently represented by its Mayor, Stoney C. Duncan, and Aldermen, Bob Bow, Harold Whitehead, Cordis Taubert, Mark Choate and Cain Choate.

3. Plaintiff avers that on March 14, 1977, pursuant to TENNESSEE CODE ANNOTATED 7–59–101 *et seq.* known as the Cable Television Act of 1977, the defendant, City of Jamestown, granted to Clarence Harding, et al. the *exclusive* right to erect, maintain, and operate a cable television system within its municipal limits. This grant was duly recorded as Ordinance Number I 2–1–77, and a copy of this instrument is affixed hereto pursuant to Rule 10.03 as Exhibit A as a part of this Complaint. This exclusive right to erect and operate this cable television system was subsequently assigned to plaintiff in June, 1988. With the written consent and approval of the defendant which Memorandum of Agreement is affixed hereto pursuant to Rule 10.03 as Exhibit B as a part of this Complaint.

4. Plaintiff avers that it is the successor in interest to the rights granted in Ordinance Number I, (Exhibit A) and assigned to on June 30, 1988, by the Memorandum of Agreement, (Exhibit B), and further is entitled to rely upon the provisions set forth in TENNESSEE CODE ANNOTATED 7–59–206 which provided that all cable service franchises which were in existence on July 1, 1988, would remain in full force and effect according to their terms.

5. Plaintiff avers that in reliance upon the terms and conditions of the grant of an *exclusive* franchise, it has spent considerable sums of money for the acquisition and improvement of its cable television system within the municipal limits of Jamestown. Plaintiff has paid in excess of $1,000,000 for the system within the city limits and has in addition spent several hundred thousand dollars to improve this system. As of January 5,

1990, the entire system within the corporate limits of the defendant has been improved by the addition of new electronic equipment, signal distribution lines, and increased channel capacity for residents of the defendant all in reliance upon the *exclusive* contractual commitments of defendant as set forth in Exhibit A.

6. Plaintiff avers that defendant has now undertaken to promote the development of another cable television system which is to be owned and operated by the defendant completely contrary to the exclusive provisions of Exhibit A. In fact, this defendant through its Mayor and Aldermen has solicited bids for the construction of this municipal cable system and received bids for the construction of this competing system at a special meeting of defendant called for December 28, 1989. See Exhibit C for the notice of bids offered hereto as a part of this Complaint. Following the opening of bids for the construction of a new system, the Mayor advised plaintiff that defendant intends to accept a bid and contract for the construction of this system.

7. Plaintiff avers that not only has the defendant advised that it will approve a bid at its regular meeting of January 8, 1990, for the construction of a cable television system, but defendant has further refused to allow inspection of the bids submitted for the construction of this system by plaintiff or members of the general public. This refusal to allow any public inspection by plaintiff or general public is completely contrary to their agreement with plaintiff to do so at the special meeting on December 28, 1989. This refusal to allow inspection of the bids is also contrary to TENNESSEE CODE ANNOTATED 10-7-503 which provides that all municipal records shall be open for personal inspection. Plaintiff avers that the Mayor and Aldermen as representatives of the defendant are refusing to allow inspection of public records which involve the proposed expenditure of several hundred thousand dollars without opportunity of any knowledgeable analysis or critical review of these bids contrary to their agreement with plaintiff and the provisions of the above cited CODE section. Without access to the public records, plaintiff has no information as to whether or not the defendant has complied with the requirements of TENNESSEE CODE ANNOTATED 7-59-202 which require prior to the approval of a new franchise for cable service the municipality is to determine the following:

"(1) The economic impact upon private property within the franchise area;.

(2) The public need for such franchise, if any;

(3) The capacity of public rights-of-way to accommodate the cable system;

(4) The present and future use of the public rights-of-way to be used by the cable system;

(5) The potential disruption to existing users of the public rights-of-way to be used by the cable system and the resultant inconvenience which may occur to the public;

(6) The financial ability of the franchise applicant to perform;

(7) Other societal interests as are generally considered in cable television franchising; and

(8) Such other additional matters, both procedural and substantive, as the municipality or county may, in its sole discretion, determine to be relevant."

8. Plaintiff avers that the defendant has advised of its intent to breach its contractual commitment with the plaintiff by ignoring or discounting the fact that defendant has made an exclusive commitment to plaintiff and its predecessors in interest. Further, defendant may accept a bid and let a contract on or shortly after January 8, 1990, for the expenditure of very substantial funds unless this Honorable Court can determine the proper construction of the Ordinance, contract rights, statutes, and other legal relations between the parties hereto pursuant to the provisions of TENNESSEE CODE ANNOTATED 29-14-101, *et seq.*

PREMISES CONSIDERED, PLAINTIFF PETITIONS FOR RELIEF AS FOLLOWS:

1. That process issue and defendant be served with a copy of this Complaint and compeled to appear and answer as provided by law.

2. That this Honorable Court require defendant to comply with TENNESSEE CODE ANNOTATED 10–7–503 and allow plaintiff the right to inspect the records relative to this file including any feasibility study, bids, or other documentation to evidence compliance with TENNESSEE CODE ANNOTATED 7–59–202.

3. That this Honorable Court determine the proper construction of the statutes, ordinances, and contracts set forth herein and enter a declaration of the rights, status, or other legal relations between the parties to this action.

4. That this Honorable Court order a speedy hearing of this matter and advance the same on its calendar and upon such hearing, enter a Declaratory Judgment declaring the rights and obligations of the parties hereto with respect to the matters set forth in this Complaint, pursuant to Section 29–14–103, TENNESSEE CODE ANNOTATED, and Rule 57 of the TENNESSEE RULES OF CIVIL PROCEDURE.

5. That Plaintiff be awarded costs and reasonable attorney's fees as a result of the necessity of filing this action.

6. That this Honorable Court grant such other and further relief as it deems necessary and equitable.

JAMES CABLE PARTNERS, L.P., a Delaware limited partnership doing business as BIG SOUTH FORK CABLEVISION
BY: /s/ [Signature]
General Manager
Ernest A. Petroff
BAKER, WORTHINGTON, CROSSLEY, STANSBERRY & WOOLF
3 Courthouse Square
Huntsville, Tennessee 37756
Attorney for the Plaintiff

## OATH

Comes William E. Verner for James Cable Partners, L.P. and after being duly sworn according to law makes oath that the facts contained in the foregoing Complaint are true and correct to the best of his knowledge, information, and belief.

/s/ [Signature]

Sworn to and subscribed before me this 8th day of January, 1990.

/s/ [Signature]
Notary Public

My Commission Expires:
7/26/91

## COST BOND

We acknowledge ourselves sureties for the costs of this cause not to exceed Five Hundred Dollars ($500.00).

JAMES CABLE PARTNERS, L.P.
BY: [Signature]
BAKER, WORTHINGTON, CROSSLEY, STANSBERRY & WOOLF
BY: [Signature]
Attorney

## APPENDIX

### EXHIBIT 6

In the Chancery Court for Fentress County, Tennessee

At Jamestown

James Cable Partners,

L.P., a Delaware limited

partnership doing business as

Big South Fork Cablevision,

Plaintiff

vs.

The City of Jamestown,

Tennessee being represented

by its Mayor, Stoney C. Duncan,

and its Aldermen, Bob Bow,

Harold Whited, Cordis Taubert,

Mark Choate and Cain Choate,

Defendant.

NO. 90–3

Filed May 25th, 1990

### ORDER

This cause came to be heard before the Honorable Billy Joe White, Chancellor, at

the Courthouse in Jamestown the 16th day of May, 1990, on the complaint of the Plaintiff, the answer of the Defendant, the record, the proof both oral and documentary, and the arguments of counsel, from all of which it appears to the Court this suit seeks a declaratory judgment that a cable television franchise agreement from the Defendant City of Jamestown granted in 1977, which was subsequently assigned to the Plaintiff, is exclusive and that a subsequent grant by the City to itself of a franchise to build its own proprietary cable television system is a breach of the exclusive provision of the Plaintiff's franchise.

The Defendant City of Jamestown denied any breach of contract contending the exclusive provision of the 1977 franchise was either preempted by the Federal Cable Communications Policy Act of 1984, codified in 47 U.S.C. § 521, et seq, or, that the exclusive provision of the franchise was rescinded as a result of the Cable Communications Policy Act which effectively took away the right of the City to regulate rates charged by the franchise owner to the cable customers.

On due consideration of the Cable Communications Policy Act, it is the opinion of the Court such Act does not amend the original Jamestown franchise because 47 U.S.C. § 557 grandfathers in franchises on the date of the Act subject to certain limitations, however, the Court finds the effect of the Cable Communications Act was to preempt the right of the City of Jamestown to regulate rates, at least at this time and place. The Court finds the right of the City of Jamestown to regulate rates was the whole consideration for the exclusive provision of the franchise, and therefore, the preemption of the right to regulate rates rescinded the exclusive provision of the franchise, accordingly,

It is hereby ORDERED, ADJUDGED, and DECREED the Complaint of the Plaintiff is not sustained. It is, therefore, dismissed at the costs of the Plaintiff.

ENTER this 24 day of May, 1990.

/s/ Billy Joe White
BILLY JOE WHITE,
CHANCELLOR

APPROVED FOR ENTRY:

/s/ Ernest A. Petroff

Ernest A. Petroff

BAKER, WORTHINGTON, CROSSLEY, STANSBERRY & WOOLF

Attorney for the Plaintiff

/s/ R. Bruce Ray

R. Bruce Ray

Attorney for the Defendant

APPENDIX

EXHIBIT 7

In the Supreme Court of Tennessee

At Nashville

James Cable Partners, L.P.,

a Delaware Limited

Partnership d/b/a Big South Fork Cablevision,

Plaintiff–Appellee,

V.

The City of Jamestown,

being represented by its

Mayor, Stoney C. Duncan,

and its Aldermen, Bob Bow,

Harold Whited, Cordis

Taubert, Mark Choate and

Cain Choate,

Defendant–Appellant.

FENTRESS CHANCERY

01–A–01–9008–CH–00296

Filed June 24, 1991

ORDER

Upon consideration of the application for permission to appeal and the entire record in

494

this cause, the Court is of the opinion that the application should be denied.

PER CURIAM

APPENDIX

EXHIBIT 8

In the Chancery Court for Fentress County, Tennessee

At Jamestown

James Cable Partners,

L.P., a Delaware Limited

Partnership doing business as

Big South Fork Cablevision,

Plaintiff,

VS.

Jamestown Cable Television and

The City of Jamestown,

Tennessee being represented

by its Mayor, Stoney C. Duncan,

and its Aldermen, Bob Bow,

Harold Whited, Cordis Taubert,

Mark Choate and Cain Choate,

Defendants.

Civil Action No. 90–3

Filed January 21, 1992

ORDER

This cause came to be heard before this Court as the result of plaintiff's Petition for Further Relief in the form of an injunction, filed with and argued before this Court on July 24, 1991 and the Order subsequently entered by this Court on August 16, 1991 providing in pertinent part that

should defendant's application (to appeal to the United States Supreme Court) be denied, plaintiff's request for further relief in the form of an injunction shall be granted and defendant, defendant's successors or assigns, and any political subdivision,

branch or arm of defendant, shall be immediately enjoined from the operation of a cable television system in the City of Jamestown, Tennessee, for the remaining term of plaintiff's exclusive franchise to operate such a system. . . .

On January 13, 1992 the United States Supreme Court entered an order denying defendants' petition for a writ of certiorari. Therefore, it now appears to this Court that the Opinion of the Tennessee Court of Appeals, Western Section at Nashville and the mandate from the Tennessee Supreme Court have become final and, accordingly, defendants should be enjoined from the maintenance and operation of a cable television system during the remaining term of plaintiff's exclusive franchise, and from otherwise violating the terms of plaintiff's franchise to provide cable television services. It is therefore

ORDERED, that defendants, defendants' successors or assigns, and any political subdivision branch or arm of the City of Jamestown be, and hereby are, enjoined from erecting, maintaining, operating or utilizing facilities for the operation of cable television or other such communications systems contrary to the plaintiff's franchise for the remaining term of plaintiff's exclusive franchise to operate such systems. It is further

ORDERED, that defendants have through and including 12:00 noon on January 31, 1992 to cease and desist in the maintenance and operation of such systems.

Entry of this Order shall in no way prejudice any rights or causes of action plaintiff may presently have or acquire against defendants in the future.

ENTER this 21 day of January, 1992.

[Signature]
Chancellor

APPROVED FOR ENTRY:

/s/ Ernest A. Petroff

Ernest A. Petroff

T. Leslie Dooley

BAKER, WORTHINGTON, CROSSLEY, STANSBERRY & WOOLF

3 Courthouse Square

Huntsville, Tennessee 37756

(615) 663–2321

Burt A. Braverman

COLE, RAYWOOD & BRAVERMAN

1919 Pennsylvania Avenue, N.W.

Washington, D.C. 20006–3458

(202) 659–9750

Attorneys for Plaintiff

/s/ R. Bruce Ray

R. Bruce Ray

Courthouse Square

P.O. Box 969

Jamestown, Tennessee 38556

Attorney for Defendants

APPENDIX

EXHIBIT 9

In the Chancery Court for Fentress County, Tennessee

At Jamestown

James Cable Partners,

L.P., a Delaware Limited

Partnership doing business as

Big South Fork Cablevision,

Plaintiff,

VS.

The City of Jamestown,

Tennessee, being represented

by its Mayor, Stoney C. Duncan,

and its Aldermen, Bob Bow,

Harold Whited, Cordis Taubert,

Mark Choate and Cain Choate,

Defendants.

CIVIL ACTION NO. 90–3

Filed April 21st, 1992

ORDER

Parties, by their counsel, appeared before the Court at the Courthouse in Jamestown the 26th day of March, 1992 on the Petition of the Plaintiff for further relief consisting of an injunction requiring Defendant, Defendant's successors or assigns, or any political subdivision, branch or arm of defendant to remove all cables, equipment, and other apparatus utilized in the operation of communications systems and additions thereto, within the City of Jamestown for the remainder of the term of Plaintiff's exclusive franchise to erect, maintain, operate and utilize such facilities within the City, and upon due consideration of the Petition, it is the Court's opinion it should not be granted, accordingly,

The Petition of the Plaintiff for Further Relief is hereby DENIED.

ENTER on this 17 day of April, 1992.

/s/ [Signature]
Chancellor

APPROVED FOR ENTRY:

/s/ Ernest A. Petroff

Ernest A. Petroff

T. Leslie Dooley

BAKER, WORTHINGTON, CROSSLEY, STANSBERRY & WOOLF

3 Courthouse Square

Huntsville, Tennessee 37756

(615) 663–2321

Burt A. Braverman

Cole, Raywood & Braverman

1919 Pennsylvania Avenue, N.W.

Washington, D.C. 20006–3458

(202) 659–9750

Attorneys for Plaintiff

/s/ R. Bruce Ray
R. Bruce Ray
Courthouse Square
P.O. Box 969
Jamestown, Tennessee 38556
(615) 879–5857
Attorney for Defendants