COX CABLE COMMUNICATIONS, INC. d/b/a Cox Cable Warner Robins, Plaintiff,

v.

The UNITED STATES of America, et al., Defendants.

Civ. A. 86–79–1–MAC(DF).

United States District Court, M.D. Georgia, Macon Division.

Oct. 1, 1991.

See also, 699 F.Supp. 917.

W. Terrell Wingfield, Jr., Cox Cable Communications, Inc., Atlanta, Ga., Michael D. Hays, Dow, Lohnes & Albertson, Washington, D.C., for plaintiff.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Vincent M. Garvey, Vaughan Finn, U.S. Dept. of Justice, Washington, D.C. (Joseph F. Wayland, Atty. Advisor, Dept. of Air Force, Office of the Gen.

Counsel, Washington, D.C., of counsel), for defendants.

Brian J. Passante, Sell & Melton, O. Hale Almand, Smith, Hawkins, Almand & Hollingsworth, Macon, Ga., for intervenor.

FITZPATRICK, District Judge.

Pending before the court are motions for summary judgment filed by plaintiff Cox Cable Communications, Inc. d/b/a Cox Cable Warner Robins ("Cox") and by defendant-intervenor CATV Communications & Communications Service Co., Inc. d/b/a Centerville Telecable ("Centerville"), a motion by Cox to substitute parties under Federal Rule of Civil Procedure 25(c) and a motion for a protective order filed by Centerville. The motion to substitute Cox Cable Middle Georgia for Cox Cable Communications, Inc., is granted. The court will consider the motions for summary judgment together.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment bears the initial burden of showing there are no genuine issues of material fact that should be decided at trial and that it is entitled to judgment as a matter of law. When this has been done, the burden shifts to the non-moving party to demonstrate that there is indeed a material issue of fact or law precluding summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## I. FACTS

In its previous order of November 14, 1988, the court held that the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–59, does not apply to this case. *Cox Cable Communications, Inc. v. United States*, 699 F.Supp. 917 (M.D.Ga.1988). The factual background of this case was adequately set forth in that order, and will not be repeated extensively here.

Cox is the owner and operator of a cable television system which provided exclusive service to Warner Robins Air Force Base ("the Base") in Warner Robins, Georgia, under a ten year franchise which ex-

pired on February 28, 1983. Instead of automatically renewing the franchise, the Air Force solicited competitive bids for cable service to the Base. In order to provide the Base with continuous service despite various delays and errors in the bidding process, Cox was granted several extensions on its franchise.

The Air Force established June 26, 1984, as the final deadline for the receipt of bidding proposals. Cox and Centerville supplied the only two bids as of that date and Cox's was lower. The Air Force then reopened the bidding process to solicit best and final offers by July 12, 1984. Centerville lowered its bid and won the contract. Cox then filed this lawsuit and won a preliminary injunction allowing it to remain on the Base. At present, the Base cable market is split between Cox and Centerville, with the latter company having the bigger share.

## II. DISCUSSION

Cox's motion for a preliminary injunction was granted on June 26, 1986. Through its present motion, Cox is seeking a permanent injunction on first amendment grounds to prevent the Air Force from interfering with its provision of cable service to the Base. Centerville has filed its own motion on the first amendment issue and also seeks summary judgment on Cox's fifth amendment claim.

> To be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation. He must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law. If the plaintiff makes such a showing, the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation....

*Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983) (citations omitted). The court will now consider these factors in turn.

## A. FIRST AMENDMENT CLAIM

### 1. A Constitutional Violation

Cox must first be entitled to first amendment protection before such a right can be violated. Certainly the activities of cable operators fall within the scope of the first amendment, although the question of how much protection is afforded has been left open. *Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 494–95, 106 S.Ct. 2034, 2037–38, 90 L.Ed.2d 480 (1986) (hereinafter *Preferred II*).

■ This does not mean, however, that the Base is forbidden from enforcing its regulations. Where speech and conduct are joined in a single course of action, first amendment values must be weighed against competing societal interests using the test in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In this case, speech in the form of editorial discretion and conduct in the form of the installation of competing cable systems are joined. The government regulation in question, i.e. the exclusive franchise, will be justified if: (a) it is within the constitutional power of the government; (b) it furthers an important or substantial governmental interest; (c) the governmental interest is unrelated to the suppression of free expression; and (d) the incidental restriction on the first amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.,* 391 U.S. at 376–77, 88 S.Ct. at 1678–79.

■ Regarding the first element, there can be no question that the awarding of a franchise, even an exclusive one, is within the power of any government, including that of the Base. It is the second element, whether the regulation furthers an important or substantial governmental interest, which is the main point of contention between the parties.

■ Centerville has claimed that an exclusive franchise is justified because the Base constitutes a natural monopoly. This occurs where physical or economic factors render a market incapable of accommodating more than one cable television system, so that the local governing body is in the best position to determine which proposed system offers the best service to the public at the lower cost. Where a natural monopoly occurs, the first amendment allows a local government to periodically award an exclusive franchise to the applicant which will best serve the public. If, however, a market has room for more than one cable company, a government's efforts to restrict the number of operators would constitute a prior restraint in violation of the first amendment. *Central Telecommunications, Inc. v. TCI Cablevision, Inc.,* 610 F.Supp. 891, 899–901 (W.D.Mo.1985). Before this claim can be considered, however, the court must determine whether the natural monopoly argument even applies to cable television systems.

■ Different types of media get different degrees of protection from the first amendment. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975). Economic scarcity, i.e. a natural monopoly, has been held to justify extensive government regulation of radio broadcasting. *Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). By contrast, the Supreme Court has rejected the natural monopoly argument in the context of newspapers. *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). "Application of a lesser standard of protection, however, is an exception to the rule that must be justified by a particular difference." *Century Federal, Inc. v. Palo Alto,* 648 F.Supp. 1465, 1470 (N.D.Cal. 1986).

■ The court concludes that the natural monopoly theory does not apply to cable television. The analogy of cable television to the traditional media of newspapers is close enough to afford cable the same first amendment protection as print media. Cable operators exercise "a significant amount of editorial discretion regarding what their programming will include." *Preferred II,* 476 U.S. at 494–95, 106 S.Ct. at 2037–38 (quoting *FCC v. Midwest Video Corp.,* 440 U.S. 689, 707, 99 S.Ct. 1435,

1445, 59 L.Ed.2d 692 (1979)). Since the number of cable channels is practically limitless, the standard of first amendment review applied to physically scarce radio airwaves cannot apply here. *Quincy Cable TV, Inc. v. FCC,* 768 F.2d 1434, 1450 (D.C.Cir.1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986). As one court has stated, "[s]o long as physical scarcity does not make some limitation on access to the market unavoidable, First Amendment considerations preclude vesting the power to control access in a governmental agency." *Group W Cable, Inc. v. Santa Cruz,* 669 F.Supp. 954, 965–66 (N.D.Cal.1987). This court therefore joins those cited above holding that cable television is entitled to the same first amendment protection as newspapers, meaning that the natural monopoly argument cannot apply and therefore is not material for purposes of this motion.

The court has reached this conclusion in large part because the natural monopoly argument rests so much on efficiency concerns. It is certainly true that it would be more efficient to allow a monopoly at the Base and have a single cable provider. Nonetheless, the first amendment, which is presumably not an issue in most antitrust and other cases involving natural monopolies, must take precedence over such concerns. "[W]hat may foster economic efficiency most certainly inhibits the first amendment." *Century Federal,* 648 F.Supp. at 1476–77. Efficiency is a laudable goal, but it cannot justify allowing a government to unnecessarily hinder first amendment rights.

■ The burden on the public domain can also be viewed as a means of justifying regulation through a natural monopoly. Certainly, public authorities have a legitimate interest in maintaining public thoroughfares and minimizing the number of times citizens must bear the inconvenience of having their streets disrupted by the installation of cable systems. This consideration, however, cannot preclude Cox from supplying cable services to the Base, since it runs the risk of unjustified limits on diversity in editorial judgments. Concerns about disruptions of the public domain do allow a government to make reasonable restrictions on the time, place and manner of the disruptions. *Preferred Communications, Inc. v. Los Angeles,* 754 F.2d 1396, 1406–07 (9th Cir.1985). Perhaps even more importantly, it must be noted that whatever physical disruption might result in this case has already occurred.

Centerville relies heavily on a series of cases holding that the natural monopoly characteristics of cable television justify greater government regulation. *See, Central Telecommunications, Inc. v. TCI Cablevision, Inc.,* 800 F.2d 711 (8th Cir.1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1358, 94 L.Ed.2d 528 (1987); *Omega Satellite Products Co. v. Indianapolis,* 694 F.2d 119 (7th Cir.1982); *Community Communications Co. v. Boulder,* 660 F.2d 1370 (10th Cir.1981), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). As another court persuasively explained, however, these cases supported the natural monopoly theory based on their concerns over efficiency and their belief that since the government can regulate the physical aspects of the cable industry which touch on the public domain it can also regulate the economic aspects. Both of these arguments ignore first amendment concerns and do not justify allowing a government, rather than the public, to decide which cable company will serve a given area. *Group W Cable,* 669 F.Supp. at 965–66.

Centerville has also argued that insufficient revenue could force it from the market unless it is given a total monopoly. This is not the kind of scarcity needed to support a natural monopoly argument, and in any case the first amendment must take precedence over monetary concerns.

In sum, the court concludes that the natural monopoly argument does not apply to cable television operators and that the granting of an exclusive franchise does not serve an important or substantial governmental interest. Cox has therefore established that its constitutional rights have been violated, and there is no need to dis-

cuss the remaining elements of the *O'Brien* test.

### 2. A Continuing Irreparable Injury

 This element has certainly been established, since the loss of first amendment freedoms, even for a short period of time, unquestionably constitutes an irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Additionally, the court believes that irreparable injury would certainly result from the disruption of Cox's service and the ensuing loss of goodwill.

### 3. Lack of an Adequate Remedy at Law

This element has also been established. Cox's first amendment rights have been violated, which justifies an injunction notwithstanding any possibility of money damages. *See, Advocates for the Arts v. Thomson,* 532 F.2d 792, 794–95 (1st Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976). Even if money damages were recoverable, it is difficult to see how such an award could compensate for the loss of first amendment rights.

The court concludes that Cox has carried its burden and is entitled to a permanent injunction in its favor.

### B. FIFTH AMENDMENT CLAIM

Centerville has moved for summary judgment in its favor on Cox's fifth amendment claim, although this issue has not been extensively discussed by the parties. The court notes, however, that since it has already concluded that the Cable Communications Policy Act does not apply to protect Cox. Cox, therefore, had no vested contract rights which could fall under the protection of the fifth amendment when its franchise expired, and so Centerville is entitled to summary judgment on this issue.

### III. CONCLUSION

Cox's motion to substitute parties is GRANTED. Cox's motion for summary judgment granting a permanent injunction is also GRANTED. Centerville's motion for summary judgment on Cox's fifth amendment claim is GRANTED, but the remainder of Centerville's motion is DENIED. Centerville's motion for a protective order is moot.

SO ORDERED.