COX CABLE COMMUNICATIONS, INC., d/b/a Cox Cable Warner Robins, Plaintiff–Appellee,

v.

The UNITED STATES of America, Russell A. Rourke, Sec. of the Air Force, Bobby G. Graham, Commander, Robins Air Force Base, John E. Elliott, Director Contracting & Mfg., RAFB, Veronica Harris, Contracting Officer, RAFB, Defendants,

CATV & Communications Service Company, Inc., Intervenor, Defendant–Appellant.

No. 92–8141.

United States Court of Appeals, Eleventh Circuit.

June 8, 1993.

O. Hale Almand, Jr., Brian J. Passante, Doye E. Green, Jr., Macon, GA, intervenor, defendant-appellant.

W. Terrell Wingfield, Jr., Atlanta, GA, Michael D. Hays, Washington, DC, for plaintiff-appellee.

Frank L. Butler, III, Macon, GA, Vincent M. Garvey, U.S. Dept. of Justice, Civ. Div., Vaughn Finn, Jonathan D. Hart, Dow, Lohnes & Albertson, Washington, DC, for defendants.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellant CATV Communications and Communications Service, Inc., d/b/a Center-

ville Telecable ("Centerville"),[1] an intervenor-defendant below, appeals the district court's grant of a permanent injunction against the United States, the United States Air Force and Robins Air Force Base (RAFB) ("the federal defendants") in favor of Appellee Cox Cable Middle Georgia, Inc. ("Cox Cable"). For the reasons that follow, we remand the case to the district court.

I. Procedural History

Between 1973 and 1983, Cox Cable provided cable television service at Robins Air Force Base under an exclusive ten-year franchise with the Air Force. When the franchise expired, the Air Force sought bids for a new contract and eventually awarded a ten-year exclusive franchise to Centerville. Cox Cable filed suit, claiming infringement of its First and Fifth Amendment rights and asserting a right to renewal of its franchise under the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 et seq. ("Cable Act of 1984"). The court granted a preliminary injunction forbidding the Air Force from forcing Cox Cable off the base and permitting Cox Cable to continue providing cable television service alongside Centerville. The court then granted Centerville's motion to intervene in the suit pursuant to F.R.Civ.P. 24(b)(2).[2] While the court did not discuss in detail its reasons for granting permissive intervention,[3] Centerville's motion had focused on the fact that a settlement between Cox Cable and the Air Force could impair Centerville's franchise, the primary value of which lay in its exclusivity.

Having unsuccessfully petitioned the court for reconsideration of the preliminary injunction, the federal defendants elected to settle with Cox Cable. When Cox Cable subsequently filed a motion for summary judgment on its First Amendment claim, the federal defendants did not oppose it. Centerville did oppose the motion and filed a cross-motion for summary judgment denial of Cox Cable's First and Fifth Amendment claims. The district court granted Cox Cable's motion for summary judgment, granted Centerville's motion for summary judgment with regard to the Fifth Amendment claim, and converted the preliminary injunction against the Air Force into a permanent injunction. 774 F.Supp. 633. Centerville filed this appeal.

Subsequent to the filing of briefs on appeal, but prior to oral argument, the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385, 1992 U.S.C.C.A.N. (106 Stat.) 1460 ("Cable Competition Act") went into effect. The Cable Competition Act amended the Cable Act of 1984 to provide, *inter alia*, that "franchising authorities" of the United States government may not grant exclusive communications franchises.

II. Discussion

■ Article III of the Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies. U.S. Const. art. III, § 2. "As an incident to the elaboration of this bedrock [case or controversy] requirement, [the Supreme Court] ha[s] always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The Supreme Court has explained the requirements for Article III standing as follows:

Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the chal-

1. During the pendency of this action, CATV Communications and Communications Service Co., Inc. changed its name to RGW Communications, Inc., d/b/a Watson Cable Company. For purposes of clarity, we adopt the parties' continued use of the name Centerville.

2. A party seeking to intervene under Rule 24(b)(2) must show that (1) its application to intervene is timely, and (2) its claim or defense and the main action have a question of law or fact in common. Fed.R.Civ.P. 24. Rule 24 provides the court with discretion to deny intervention even if both of these requirements are met. *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir.1983).

3. The opinion of the district court is reproduced at 699 F.Supp. 917 (M.D.Ga.1988).

lenged action and is likely to be redressed by a favorable decision. *Id.* at 472, 102 S.Ct. at 758 (internal citations omitted). We have held that a party seeking to intervene in a lawsuit under Fed.R.Civ.P. 24 need not satisfy the requirements of standing in addition to the requirements for intervention under Rule 24. *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989). It is well-settled, however, that when an intervenor appeals and the party on whose side he intervened does not, the intervenor must demonstrate standing in order to continue the suit. *Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986); *see also Bryant v. Yellen,* 447 U.S. 352, 366, 100 S.Ct. 2232, 2240, 65 L.Ed.2d 184 (1980).

We find that the Cable Competition Act applies to this action, assuming, for purposes of this appeal, that it is constitutional. Under the terms of the Act, Centerville's franchise would become invalid to the extent that it is an exclusive franchise. In addition, Centerville could no longer assert a legally protected right which is threatened by Cox Cable's continued presence at RAFB and would thus lack standing to pursue this appeal.

### A. *Applicability of the Cable Competition Act*

The portion of the Cable Competition Act relevant to this appeal provides that "a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise." Pub.L. 102–385, 106 Stat. 1483, sec. 7(a)(1). Centerville argues that the Cable Competition Act does not apply to its franchise with the Air Force for two reasons: first, because the Air Force is not a franchising authority within the meaning of the Cable Act; and second, because Congress did not intend that the Act divest existing franchisees of their exclusive franchises. We disagree with both contentions and conclude that the Cable Competition Act, properly interpreted, would encompass Centerville's exclusive franchise.

### 1. "Franchising Authority"

■ A "franchising authority" is defined in the Cable Act of 1984 as "any governmental entity empowered by federal, state, or local law to grant a franchise." 47 U.S.C. § 522(9). The Air Force has considered itself a franchising authority since at least 1985. *See* April 11, 1985 Directive from Air Force Chief of Staff (finding Cable Act of 1984 applicable to the Air Force "since [the Air Force] is considered a franchising authority"); *see also* Air Force Regulation 70–3, effective September 26, 1988 (recognizing Air Force as a franchising authority). Had Congress intended to exclude the Air Force from the class of government organizations authorized to award franchises, it had an ideal opportunity to do so in conjunction with its alteration of franchising regulations in the Cable Competition Act. We find nothing in the Act to suggest that Congress wished to reverse the Air Force's status as a franchising authority. We therefore conclude that the Air Force is a franchising authority within the meaning of the Cable Competition Act.

### 2. Applicability to Existing Franchises

■ Centerville urges that the Cable Competition Act should not be interpreted to divest rights under a franchise awarded prior to the effective date of the Act. The portion of the Act which impacts existing franchises provides that a franchising authority "may not unreasonably refuse to award an additional competitive franchise." 47 U.S.C. § 541(a). The Cable Competition Act does not automatically invalidate existing exclusive franchises; rather, it invalidates the exclusivity of such franchises when a qualified applicant requests access to the market serviced by those franchises. The Act overrules the exclusivity of government franchises by imposing a reasonableness requirement on a franchising authority's refusal to award an additional franchise. Given that the award of exclusive franchises is prohibited by the first clause of the Act, we believe that refusal to award an additional franchise solely because of the existence of an exclusive franchise with another party would be an "unreasonable refusal" under the Act.

■ Were we to adopt Centerville's position that the Act does not apply to existing franchises, full and uniform application of the

Act would not occur until after the expiration of all existing franchises with the government, regardless of their duration. While Congress could have chosen such a course, we conclude from the text of the Act that it did not do so. Accordingly, we hold that the Cable Competition Act applies to Centerville's exclusive franchise to the extent that the franchise alone could not support a refusal to award Cox Cable access to the cable television market at RAFB.

### B. *Standing*

■ The Cable Competition Act, by its terms, deprives Centerville of a basis from which to assert an injury in fact for purposes of standing under Article III of the Constitution. The injury in fact component of standing requires a party to demonstrate "an invasion of a legally-protected interest." *Lujan v. Defenders of Wildlife*, —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). No legally cognizable injury arises unless an interest is protected by statute or otherwise. *Davis Forestry Corp. v. Smith*, 707 F.2d 1325, 1329 (11th Cir.1983); and see *Lujan, supra*, at ——, 112 S.Ct. at 2145 (Congress may elevate to the status of legally cognizable injuries *de facto* injuries which were previously inadequate in law.) Under the Cable Competition Act, Centerville could not enforce the exclusivity of its franchise with the Air Force, and therefore would suffer no legally cognizable injury by Cox Cable's continued presence at RAFB.[4]

We recognize the unanticipated obstacles which the Cable Competition Act places in Centerville's path. Cox Cable's presence at RAFB was presumably not factored into Centerville's bid on the RAFB contract. Because the Cable Competition Act became effective during the course of this appeal, Centerville has requested an opportunity to challenge the law on constitutional grounds. Although the Contracts Clause of Article I section 10[5] applies only to state governments and does not limit the power of the federal legislature, Centerville might claim that the Act impairs its contract with the Air Force in violation of the Due Process Clause of the Fifth Amendment[6] or some other provision of the Constitution. We express no opinion about the likelihood of success of such a claim for we think it best that the district court first conduct a hearing and render a decision on the issue. Accordingly, we RE-MAND the case with INSTRUCTION that should the district court find that application of the Cable Competition Act to this case is constitutional, it dismiss the case for want of standing and subject matter jurisdiction.

---

4. Given the fact that the federal defendants have settled their differences with Cox Cable and are not parties to this appeal, there is serious doubt as to whether Centerville could meet the redress portion of standing. The Air Force consented to the presence of both Cox Cable and Centerville at RAFB. We fail to see why Centerville did not raise its objections to this state of affairs with the Air Force. In any event, Centerville fails to satisfy the injury in fact requirement of Article III and we need not address further the availability of redress.

5. "No state shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10.

6. "No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.