COX CABLE COMMUNICATIONS, INC., d/b/a Cox Cable Warner Robins, Plaintiff,

v.

UNITED STATES of America; Russell A. Rourke, Secretary of the Air Force; Bobby G. Graham, Commander, Robins Air Force Base; John E. Elliot, Director, Contracting and Manufacturing, Robins Air Force Base; and Veronica Harris, Contracting Officer, Robins Air Force Base, Defendants,

and

CATV & Communications Service Co., Inc. d/b/a Centerville Telecable, Defendant–Intervenor.

No. CA–86–79–1–MAC(DF).

United States District Court, M.D. Georgia, Macon Division.

Oct. 17, 1994.

W. Terrell Wingfield, Jr., Atlanta, GA, Michael D. Hays, Washington, DC, and James W. Kimmell, Jr., Atlanta, GA, for plaintiff.

Frank L. Butler, III, Macon, GA, Vincent M. Garvey, Vaughan Finn, U.S. Dept. of Justice, Civ. Div., James C. Dever, III, Dept. of the Air Force, Office of Gen. Council, and Eric D. Goulian, U.S. Department of Justice, Washington, DC, for defendants.

O. Hale Almand, Jr., Brian J. Passante and Doye E. Green, Jr., Macon, GA, for intervenor defendant.

## ORDER

FITZPATRICK, District Judge.

Cox Cable came to this court seeking an injunction that would provide it permanent cable television access to Robins Air Force Base. Centerville Cable[1] intervened in Cox's equitable action because it perceived Cox's designs as contrary to Centerville's interest in maintaining an exclusive contract for Robins' cable services. The injunction was granted,[2] Centerville appealed, and while Centerville awaited its chance to argue before the Eleventh Circuit Court of Appeals the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385, 1992 U.S.C.C.A.N. (106 Stat) 1460 ("Cable Competition Act") became effective.[3]

Once new legislation factored into the equation the Court of Appeals encountered a complex jurisdictional and constitutional dilemma warranting further district court review. This case was then remanded with specific instructions:

[S]hould the district court find [that] the application of the Cable Competition Act to this case is constitutional, it [shall] dismiss

the case for want of standing and subject matter jurisdiction.

*Cox Cable Communications, Inc. v. United States,* 992 F.2d 1178, 1182 (11th Cir.1993).

On remand Centerville contends that retroactive application of the Cable Competition Act violates the due process and takings clauses of the Fifth Amendment.[4] The extent of Centerville's contentions are narrower than Centerville would probably prefer because the Court of Appeals previously determined that the Cable Competition Act applies retroactively.[5] *Cox,* 992 F.2d at 1181–82. Therefore today's analysis focuses only on whether retroactive application violates Centerville's enumerated constitutional maxims, and it does not question whether retroactive application of the Act is itself appropriate.[6]

Centerville's argument requires not only application of relevant Fifth Amendment clauses to its Air Force contract: one must first determine whether the contract provides a constitutionally protected property right cognizable in the Fifth Amendment. Thus three, and not two, independent analyses need to be performed: property rights, due process and takings.

1. Throughout this order "Centerville" and "Centerville Cable" are used to identify CATV and Communications Service Co., Inc., and RGW Communications, Inc., d/b/a Watson Cable Co.

2. *Cox Cable Communications, Inc. v. United States,* 774 F.Supp. 633 (M.D.Ga.1991).

3. Codified at 47 U.S.C.A. §§ 521 *et seq.*

4. "No person shall ... be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

Centerville's constitutional challenge is directed toward section 7(a) of the Cable Competition Act, which provides in pertinent part that:
A franchising authority may award, in accordance with the provisions of this subchapter, 1 or more franchises within its jurisdiction; except that a franchising authority may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise.
47 U.S.C.A. § 541(a)(1). The Court of Appeals previously concluded that "the Air Force is a

franchising authority within the meaning of the Cable Competition Act." *Cox,* 992 F.2d at 1181.

5. Centerville Cable likewise interprets the Circuit's holding as a bar to examination of Congressional intent regarding retroactive statutory application. *Response Brief of Defendant–Intervenor at 1.*

6. Cox Cable contends that this particular application of the Cable Competition Act is not truly retroactive. *Reply Brief of Plaintiff at 3 n. 3.* Considering the plain language of the Court of Appeals' opinion, this court's interpretation of that opinion, and the intervenor's above-cited consistent admission contrary to its interest, Cox's argument on this point is purely academic: whether or not this particular application of the Cable Competition Act is retroactive the same constitutional analysis must be performed.

Were the issue of retroactivity not obviated by a prior ruling then this court might construe the Act in accordance with *James Cable v. City of Jamestown, Tennessee,* 822 F.Supp. 476 (M.D.Tenn.1993), as that decision disapproving retroactive statutory application seems a plausible translation of Congressional intent.

## I. Property Rights Analysis

▮ Because Centerville's entire argument rests upon the premise that its contract with the Air Force provides a constitutionally protected property right one should first analyze whether such a property interest is even at issue in this case. Toward that end the court notes that there are two sources often used for defining property interests: state and federal laws. *See, e.g., Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798 (1992); *see also, Gramercy Spire Tenants' Association v. Harris,* 446 F.Supp. 814 (S.D.N.Y.1977). According to Georgia case law, contracts establish property rights. *Department of Transportation v. Consolidated Equities Corporation,* 181 Ga.App. 672, 353 S.E.2d 603 (1987). Contracts also confer property interests as a matter of federal common law. *Lynch v. United States,* 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434 (1934). However, references to case and common law begin rather than end the inquiry for, no matter what the source of the property interest, its application to federal constitutional litigation "is a matter of federal constitutional law...." *Brown v. Georgia Department of Revenue,* 881 F.2d 1018, 1025 (11th Cir.1989).

Federal constitutional law reveals the following:

[A]s the Court said in *Bowen v. Agencies,* 477 U.S. [41] at 55, 106 S.Ct. [2390] at 2398 [91 L.Ed.2d 35 (1986) ], the "contractual right" at issue bears little if any resemblance to rights held to constitute property within the meaning of the Fifth Amendment. It was neither a debt of the government nor an obligation to provide benefits under a contract for which the obligee paid a monetary premium, as in *Lynch.* "Rather, the provision [that affected the contract] simply was part of a regulatory program over which Congress retained authority to amend in the exercise of its power to provide for the general welfare. (Cit.) The asserted right ... appears to us to be one "that lies in the periphery where vested rights do not attach." (Cit.)

*Housing Authority of City of Fort Collins v. United States,* 980 F.2d 624, 630 (10th Cir. 1992) (citations omitted).

▮ Contractual rights are subject to modification by Congressional regulation even when an agency of the United States is a party to the contract "unless Congress has clearly and unmistakably empowered the agency" to abrogate Congress' sovereign power in the agreement. *Transohio Savings Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 622 (D.C.Cir.1992). *See also Bowen v. Public Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986). Congress is powerless "to reduce expenditures by abrogating contractual obligations of the United States," *Lynch,* 292 U.S. at 580, 54 S.Ct. at 844, but this limitation does not preclude Congressional acts which otherwise impact upon the government's business relations.[7]

Centerville argues that the precepts just discussed, which are referred to as the doctrines of "unmistakability" and "sovereign acts" in legal parlance, are not applicable to this case because government involvement is incidental to this particular contract. In other words, a contract of this same type could have been entered into without any federal involvement, and so these doctrines are irrelevant because the government participates as a contractor, not a sovereign. *Defendant–Intervenor's Brief in Response at 11–16.* Hence, as the argument goes, Centerville did not need an explicit waiver of the sovereign's authority to enforce the franchise agreement in spite of subsequent Congressional regulation.

---

7. The United States adroitly notes in its brief that the principles just described are particularly forceful when a contractual relationship involves a government attempt to "implement a comprehensive social welfare program affecting millions of individuals throughout our Nation." *Guaranty Financial Services, Inc. v. Ryan,* 928 F.2d 994, 1000 (11th Cir.1991) (quoting *Bowen v. Agencies,* 477 U.S. at 53, 106 S.Ct. at 2397). However, this court is not willing to accept the government's unstated premise that a mandate for broad access to cable television "promotes" social welfare. In any case the government's argument is sufficiently vigorous without reference to *Guaranty Financial.*

Centerville makes a good point, but the following conclusion is probably not what was intended:

> Unlike the doctrine of sovereign immunity, the Sovereign Acts Doctrine does *not* confer a privilege upon the government that would not be enjoyed by private parties. To the contrary, it ensures that parties contracting with the government will not have rights against the government that the same contract would not afford against a private party.

*Winstar Corp. v. United States,* 994 F.2d 797, 808 (Fed.Cir.1993). If Centerville were engaged in contractual relations with a municipality, county or state, the outcome of today's analysis would be the same because Congress reserved the right to enact legislation affecting the cable industry irrespective of the names on the contract. Consequently Centerville's agreement lacks a cognizable, constitutionally protected property interest.[8]

For reasons already stated this court must dismiss Centerville's claim, and the bases for dismissal extend even farther. Assuming, *arguendo,* that Centerville does have a constitutionally protected property interest in its contract with the Air Force, it nevertheless fails to establish a claim under the Fifth Amendment due process and takings clauses.

## II. Due Process Analysis

■ The burden of establishing a due process violation rests upon the complaining party. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984) (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). In the present context this burden requires

that Centerville overcome a presumption that Congress acted rationally when it enacted § 541(a)(1) of the Cable Competition Act.[9] Centerville must establish that Congress' passage of 47 U.S.C.A. § 541(a)(1) was irrational or arbitrary because it was not related to the goal of promoting competition and expanding consumer options within the cable industry.[10]

■ Essentially Centerville contends that the retroactive application of § 541(a)(1) is not rationally related to Congress' goal of promoting competition because, under the facts of this case, the result will be contrary to Congress' intent. *See, e.g., Defendant–Intervenor's Brief at 14.* Even when one accepts Centerville's version of the facts this economic anomaly is no basis for concluding that retroactive application of § 541(a)(1) is itself irrational:

> The ... law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement.... But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and ... [the legislature] might have thought that the particular legislative measure was a rational way to correct it.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The day is gone when this Court uses the Due Process Clause ... to strike down ... laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. (Cits.).... We emphasize again what Chief Justice Waite said in *Munn v. State of Illinois,* 94

---

8. Though not necessary to complete this analysis, mention should be made of the fact that Centerville was on notice of Congress' intent to reserve unto itself all cable regulatory authority. *See James Cable,* 822 F.Supp. at 478 n. 3. Thus, today's decision buttresses constitutionality with equity.

9. All parties to this action agree that the "rational relationship" test supplies the appropriate standard for evaluating the constitutionality of Centerville's due process claim. *See Defendant–Intervenor's Brief at 10; Plaintiff's Brief at 9; and Defendant's Brief at 10.*

10. The ostensible Congressional purpose for encouraging the presence of multiple franchises is to:

> promote competition in the delivery of diverse video programming and to assure that the widest possible diversity of information sources are made available to the public from cable systems in a manner consistent with growth and development of cable systems.

47 U.S.C.A. § 532(a).

U.S. 113, 24 L.Ed. 77 [ (1876) ], "For protection against abuses by the legislatures the people must resort to the polls, not to the courts." *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

▬▬ "Congress has 'absolutely no obligation to select a scheme that a court later would find to be the fairest, but simply one that was rational and not arbitrary.'" *Colorado Springs Production Credit Association v. Farm Credit Administration,* 758 F.Supp. 6, 9 (D.D.C.1991) (quoting *National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Railway Co.,* 470 U.S. 451, 477, 105 S.Ct. 1441, 1458, 84 L.Ed.2d 432 (1985)). Retroactive application of a statute, like any other application, receives deferential review from courts.[11] *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* —— U.S. ——, ——, 113 S.Ct. 2264, 2288, 124 L.Ed.2d 539 (1993). Congress is not required to make a fact-specific review of every entity affected by proposed legislation before enactment. *Seniors Civil Liberties Association, Inc. v. Kemp,* 965 F.2d 1030, 1035 n. 8 (11th Cir.1992). Nor is it necessary for Congress to ensure that § 541(a)(1) accomplish the goal of furthering competition in every instance. *See Lee Optical,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464 (1955). Section 541(a)(1) "illuminates congressional concern with the protection of *competition,* not *competitors.*" *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). Application of § 541(a)(1) to conditions existing at Robins Air Force Base might indeed result in less local competition, but one cannot conclude from this result that the Act is not rationally related to Congress' stated goal of promoting cable industry competition. Consequently § 541(a)(1) withstands this due process challenge.[12]

---

**11.** "It does not follow, however, that what Congress can legislate prospectively it can legislate retrospectively." *Turner Elkhorn,* 428 U.S. at 16, 96 S.Ct. at 2893, 49 L.Ed.2d at 767.

**12.** Relying upon principles enumerated in *Lynch,* Centerville also intimates that the Cable Competition Act demands a higher level of scrutiny than

## III. Takings Analysis

▬▬ Centerville holds no property interest and suffered no deprivation of due process. Neither was it the victim of a taking without just compensation. Again assuming for the sake of argument that Centerville held a constitutionally recognized property interest in its Air Force contract there was nevertheless not a "taking" in the usual sense of the word and, even if there was a taking, it was not without compensation.

▬▬ There was no taking in this instance because,

In the course of regulating commercial and other human affairs, Congress routinely creates burdens for some that directly benefit others. For example, Congress may set minimum wages, control prices, or create causes of action that did not previously exist. Given the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another.

*Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211, 223, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). The Supreme Court recognizes two situations where a taking may be said to have occurred without any need for a more fact specific analysis: physical invasion onto one's property and denial of all economically beneficial or productive use. *Lucas,* —— U.S. at ——, 112 S.Ct. at 2893. In the present case the first of these situations is inapplicable and the second did not occur.

Centerville asserts that destruction of the exclusivity of its Air Force contract destroys all inherent value of the exclusive franchise, but the Court has already rejected Centerville's reasoning:

To the extent that any portion of property is taken, that portion is always taken in its

that afforded by the rational relationship test. *Brief of Defendant–Intervenor at 11.* For reasons previously discussed the court does not view this Act as the type of government obligation at issue in *Lynch,* and so a more stringent review would be inappropriate.

entirety; the relevant question, however, is whether the property taken is all, or only a portion of the parcel in question. *Concrete Pipe & Products,* —— U.S. at ——, 113 S.Ct. at 2290. Centerville's exclusivity provision was a part of its contract, but it did not constitute the entirety of the contract. Evidence that Centerville still provides services in accordance with the contract's remainder, coupled with the fact that one can logically discuss exclusivity as a characteristic separate from the contract, indicates that destruction of exclusivity is not equivalent to destruction of the contract.[13] "At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard,* 444 U.S. 51, 65–66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979). Centerville's contract thus still provides economically beneficial use.

■■■ Since Centerville's contract does not fit into either of the legal categories allowing courts to unequivocally assert an unconstitutional taking, next comes an *ad hoc* factual analysis specific to this case. *See Lucas,* —— U.S. at ——, 112 S.Ct. at 2893. Three factors have "particular significance" to this investigation: " '(1) the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " *Connolly,* 475 U.S. at 225, 106 S.Ct. at 1026 (quoting *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)).

Application of these three factors indicates that, under the facts of this case, no unconstitutional taking has occurred. With respect to the third prong of the *Penn Central* test, it must be noted that the government did not appropriate any of Centerville's assets for its own use. Instead, the interference with Centerville's assumed property rights "arises from a public program that adjusts the benefits and burdens of economic life and, ... does not constitute a taking requiring Government compensation." *Connolly,* 475 U.S. at 225, 106 S.Ct. at 1026.

Congress never promised that it would abstain from all actions having an economic impact upon the cable industry and thereby provide these media providers with eternal monopolistic, industry-wide protection from competition. In fact, cable providers have confronted competition from airwaves and video for years, and they will probably soon confront digital broadcasting and fiber optic competition. By forcing Centerville to compete with other cable competitors Congress alters the equation but does not exact unreasonable economic impact. Given aggressive marketing and research strategies undertaken by promoters of alternatives to cable, one may reasonably say that the value of a cable franchise was already greatly diminished before Congress recognized the need to promote cable industry competition.

Neither can Centerville assert that the Cable Competition Act interfered with distinct investment-backed expectations. Facts specific to this case reveal negotiations regarding the exclusivity provision of Centerville's Air Force contract before a final agreement was reached. Also, as discussed *supra,* note 8, Centerville was in any event on notice that Congress might alter the regulatory structure imposed upon the cable industry. Consequently later congressional regulations did nothing to upset investment expectations.

■■■ Failing to carry the weight of persuasion with any of the three *Penn Central* factors indicates that there could have been no taking in the present case even if there were a property right at stake. Moreover, the Constitution does not preclude *all* takings; rather, it prevents takings without

---

**13.** An unprofitable business is not necessarily valueless. *Cf. Lucas,* —— U.S. at —— n. 8, 112 S.Ct. at 2895 n. 8. ("It is true that in at least *some* cases the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full. But that occasional result is no more strange than the gross disparity between the landowner whose premises are taken for a highway (who recovers in full) and the landowner whose property is reduced to 5% of its former value by the highway (who recovers nothing). Takings law is full of these 'all-or-nothing' situations").

just compensation.[14] In the instant matter injunctive relief is not available so long as Centerville is afforded subsequent compensation for its alleged injury. *Cf. First English Evangelical,* 482 U.S. at 321 n. 10, 107 S.Ct. at 2389 n. 10. The Tucker Act, 28 U.S.C.A. § 1491(a)(1) provides a subsequent source of compensation to Centerville.[15]

Finally, assuming that Centerville has a constitutionally protected property right that was taken without any provision for just compensation, this constitutional violation would be best addressed in an action between Centerville and the United States. Centerville can have no claim against Cox for the deprivations that it alleges, and so the present suit is probably not a proper vehicle for obtaining redress anyway.

## SUMMARY

Centerville enjoys no constitutionally protected property interest in its contract with the Air Force. Even if there was a property interest at stake in this litigation, there has been no violation of the due process or takings clauses of the Fifth Amendment. Accordingly, pursuant to instructions on remand, this action is hereby **DISMISSED** for want of standing and subject matter jurisdiction.

SO ORDERED.

---

**14.** The Fifth Amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* 482 U.S. 304, 314, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987).

**15.** In pertinent part 28 U.S.C.A. § 1491(a)(1) states that the United States Court of Federal Claims "shall have jurisdiction to render judgment on any claim against the United States founded either upon the Constitution, or any Act of Congress...."